United States Court of Appeals,

Fifth Circuit.

Nos. 93-3601, 93-3759.

Ronald TICHENOR, Plaintiff-Appellant, Cross-Appellee,

v.

ROMAN CATHOLIC CHURCH OF the ARCHDIOCESE OF NEW ORLEANS, et al.,
Defendants-Appellees, Cross-Appellants.

Ronald TICHENOR, Plaintiff,

v.

ROMAN CATHOLIC CHURCH OF the ARCHDIOCESE OF NEW ORLEANS, et al.,
Defendants.

Dino CINEL, Defendant-Cross Claimant-Appellant,

v.

UNITED STATES FIDELITY & GUARANTEE COMPANY, Cross-Defendant Appellee.

Sept. 26, 1994.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before WISDOM and JONES, Circuit Judges, and FITZWATER[*], District Judge.

WISDOM, Circuit Judge:

Dino Cinel, a Catholic priest, engaged in sexual relations with Ronald Wayne Tichenor for

several years beginning while Tichenor was an adolescent.[1] That relationship spawned this and other

litigation.[2] The two cases we have consolidated for the purposes of this appeal are limited to the

---

[*]District Judge of the Northern District of Texas, sitting by designation.

[1]The record does not permit a more precise reference to Tichenor's age.

[2]*See Cinel v. Connick,* 15 F.3d 1338 (5th Cir.1994) (Cinel's civil rights action against the district attorney's office regarding due process and damage to his reputation), *petition for cert. filed,* 63 U.S.L.W. 3065 (July 5, 1994); *State v. Cinel,* 619 So.2d 770 (La.App. 4 Cir.1993) (reversing trial court's motion to quash bill of information in trial on state criminal charges of possession of commercially made items of pornography), *cert. denied,* --- U.S. ----, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994); *Tichenor v. Roman Catholic Church of the Archdiocese of New Orleans, et al.,* Civil Action 91-09426, Div. "F" (pending case similar to the present suit, but filed in Civil District Court for the Parish of Orleans, State of Louisiana).

comparatively narrow questions of personal jurisdiction, statute of limitations, and the duty to defend.

*The History of the Case.*

An extensive review of the facts is unnecessary. In December 1988, Father James Tarantino, the pastor of St. Rita Roman Catholic Church in New Orleans ("St. Rita's"), discovered pornographic materials depicting young boys engaged in sexual activity in then-Father Cinel's room. Included in the assortment was a series of videotapes and photographs that Cinel had taken of Tichenor who appeared in sexually provocative poses and various states of undress. Upon making his discovery, Father Tarantino notified archdiocesan officials who, in turn, removed Cinel from St. Rita's. Eventually, Cinel agreed to leave the priesthood.[3]

A few months later, in the spring of 1989, Sgt. William George Tolar, an investigator with the Orleans Parish District Attorney, contacted Tichenor in conjunction with a pending investigation of Father Cinel. The district attorney's office sought Tichenor's cooperation for help in prosecuting Cinel on criminal charges of possession of pornographic material depicting minors.[4] Tichenor reluctantly agreed to meet with the investigator.[5]

Two years later, private investigator Gary Raymond and television news reporter Richard Angelico met with Tichenor.[6] Angelico was investigating allegations of sexual abuse by Cinel of several young boys for a news program and sought an interview with Tichenor. That interview subsequently was aired on television in New Orleans, accompanied with reports that Cinel had engaged in sexual relations with Tichenor and had memorialized these events on film. Tichenor's remaining hopes for anonymity received their death-knell when Raymond sold some of the videotapes

---

[3]A more extensive background of the events leading to Father Tarantino's discovery of the pornographic material appears in *State v. Cinel,* 619 So.2d at 771-75. A more extensive background of the subsequent publication and distribution of the pornography appears in *Cinel v. Connick,* 15 F.3d at 1340-41.

[4]*See State v. Cinel,* 619 So.2d at 772.

[5]Tichenor had severed his relationship with Cinel in December 1986 and had hoped to put the past behind him. By then, however, the publicity surrounding the case had disturbed his comparatively tranquil, anonymous life in Florida.

[6]Although the details are sketchy, Raymond had secured possession of Cinel's home-produced pornographic videotapes.

to Geraldo Rivera and his employer, Tribune Entertainment Company. Rivera and company included Tichenor's saga on an episode of his nationally syndicated program, "Now It Can Be Told".

Tichenor filed suit in Mississippi state court against Cinel, the Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese"), and St. Rita's.[7] In his petition, Tichenor alleged that, while he was a minor, Cinel, a duly ordained priest at St. Rita's, performed illicit acts upon him in Louisiana and Mississippi. He also alleged that Cinel defamed him and invaded his privacy by marketing videotapes and/or photographs of Tichenor.

Tichenor also directed his complaint at the Archdiocese and St. Rita's. He alleged that the Archdiocese and St. Rita's were liable because they knew or should have known that illicit acts were being performed on their premises and at Cinel's home in Mississippi. He charged that they failed to protect him or take appropriate measures to ascertain or correct the situation. Moreover, he alleged that they knew or should have known that they were fostering Cinel's illicit activities and providing him with the instrumentalities with which to conduct such activities.

In his petition, Tichenor asserted that Cinel, the Archdiocese, and St. Rita's, all non-residents of Mississippi, were subject to the personal jurisdiction of the Mississippi court pursuant to Miss.Code Ann. § 13-3-57, Mississippi's long-arm statute. Citing the parties' diversity of citizenship, the Archdiocese and St. Rita's removed the case to federal court. They also were granted a transfer of the case to the Eastern District of Louisiana.

The Archdiocese and St. Rita's moved for summary judgment. They argued first that the court lacked *in personam* jurisdiction over them and, second, that the claims against them were barred by the applicable statute of limitations. Cinel also moved for summary judgment on the sole ground that Tichenor's claims were time-barred. On August 4, 1993, the district court granted the defendants summary judgment and, accordingly, dismissed Tichenor's suit. Tichenor appeals that judgment.[8]

---

[7]As mentioned, Tichenor also filed suit in Louisiana state court. *See Tichenor v. Roman Catholic Church of the Archdiocese of New Orleans, et al.,* Civil Action 91-09426, Div. "F".

[8]With regard to the Archdiocese and St. Rita's, the district court addressed only the jurisdiction question. The Archdiocese and St. Rita's mount a cross-appeal based on the district court's failure

On May 20, 1993, following the removal and transfer of this action, Cinel filed a cross-claim against United States Fidelity and Guarantee Company ("USF & G"). Cinel argued that because he had been sued in his capacity as a Catholic priest, USF & G was obligated to defend him and indemnify him for any damages. USF & G disagreed and filed a motion for summary judgment.

The district court originally dismissed Cinel's cross-claim and USF & G's motion for summary judgment as moot. Upon reconsideration, however, the court held that the case was not moot because Cinel would continue to incur defense costs. On the merits, the court held that Cinel was not acting within the scope of his employment when he engaged in sexual activities with Tichenor and, thus, was not entitled to a defense or indemnification under the terms of the policy. Cinel appeals that judgment.

*The Standard of Review.*

All of the issues before us were decided on summary judgment. Rule 56 of the Federal Rules of Civil Procedure instructs that we may grant summary judgment only where (1) the record discloses no genuine issue as to a material fact and (2) the moving party is entitled to judgment as a matter of law. We make both of these determinations without regard to the results reached by the district court.

Although we take the facts in the light most favorable to the non-movant (here, Cinel),[9] he nonetheless must offer proper support in opposing the motion. Mere averments as to factual disputes are not sufficient to overcome a properly supported motion.[10] Ultimately, no genuine issues of fact exist if the record could not lead a rational trier of fact to find for the non-moving party.[11]

I. TICHENOR'S APPEAL

---

to dismiss the claims against them based on statute of limitations as well as on jurisdictional grounds.

[9]*Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).

[10]*Id.* at 248, 106 S.Ct. at 2510.

[11]*Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

*A. Are the Defendants Subject to Personal Jurisdiction?*

Tichenor raises two distinct arguments regarding the question of personal jurisdiction, both of which are outgrowths of his original complaint. He contends that the Archdiocese and St. Rita's are within Mississippi's personal jurisdiction on the basis of, first, their vicarious liability and, second, their independent liability. It is important to keep in mind that, for the purposes of these jurisdictional questions, we are concerned only with those events which transpired in or otherwise affect jurisdiction in Mississippi.[12]

Going over the basics of *in personam* jurisdiction reads like a first-year Civil Procedure class in law school. The appropriate starting point is *Pennoyer v. Neff*[13] in which the Supreme Court laid down the foundational proposition that a court without jurisdiction over a defendant is powerless to impose upon him a personal obligation or duty. The Court's subsequent decisions culminated with *International Shoe Co. v. Washington*[14] and the current test: A court may exercise personal jurisdiction if a non-resident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice' ". This test is the aegis that protects a non-resident defendant's due process rights as guaranteed by the Fourteenth Amendment.[15]

In a diversity action such as this, a federal court enjoys jurisdiction over a nonresident defendant to the extent permitted by the long-arm statute of the forum state—here, Mississippi.[16] We

---

[12]This reminder is necessary for most of the events that Tichenor has alleged occurred not in Mississippi, but at St. Rita's in Louisiana.

[13]95 U.S. 714, 732-33, 24 L.Ed. 565 (1878).

[14]326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

[15]*Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977); *De Melo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270 (5th Cir.1983). The number of contacts is not significant; rather, the focus is on the degree to which the defendant purposefully availed himself to the processes of the state. *See id.* (citations omitted).

[16]*DeMelo,* 711 F.2d at 1264; *Brown v. Flowers Indus. Inc.,* 688 F.2d 328, 331 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983).

note that, although Mississippi's long-arm statute is not co-extensive with due process,[17] due process defines the constitutional boundary or outer limits within which personal jurisdiction may be exercised.[18]

The Mississippi statute provides *in personam* jurisdiction over the following non-resident defendants: those who make contracts with a resident to be performed at least in part in Mississippi; tortfeasors whose wrongs take place in the state, whether committed against a resident or non-resident; and those who "do business" in Mississippi.[19] The question presented, then, is whether the Archdiocese and St. Rita's, both non-resident defendants, have committed a tort in whole or in part within the state of Mississippi against Tichenor, another nonresident.[20]

Although most of the unfortunate events in this case took place in Louisiana, Tichenor alleges that Cinel used his position and power to manipulate him into sexual relations at Cinel's house in Mississippi. In an effort to tie in the Archdiocese and St. Rita's, Tichenor argues that the other priests and lay personnel at St. Rita's were aware that Tichenor stayed with Cinel in Mississippi.

1. A Theory of Respondeat Superior

Tichenor argues that the Archdiocese and St. Rita's are vicariously liable for Cinel's conduct and, therefore, subject to personal jurisdiction in Mississippi. Under Mississippi law, an employer is

---

[17]*Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616-17 (5th Cir.1989).

[18]*Id.* at 1260; *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1168-69 (5th Cir.1985). In the case at hand, the district court concluded that the Archdiocese and St. Rita were not subject to *in personam* jurisdiction under the Mississippi long-arm statute and, therefore, the court did not reach the question of whether the assertion of jurisdiction over the defendants was consistent with the Due Process Clause of the Fourteenth Amendment.

[19]*See Cycles, Ltd.,* 889 F.2d at 616. In the district court and in his appellate brief, Tichenor has not alleged either the existence of any contract or that the Archdiocese or St. Rita's has done business in Mississippi. At oral argument, Tichenor's counsel for the first time argued that the Archdiocese does business in Mississippi because one of its television broadcasts can be viewed there. Oral argument is not the proper place to introduce new legal theories.

[20]Miss.Code Ann. § 13-3-57 provides, in pertinent part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as doing business herein, who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, shall thereby be subjected to the jurisdiction of the courts of this state.

liable for the tortious conduct of his employees if that employee was acting within the scope of his employment. The employee acts outside the scope of his employment

> so long as he is engaged in affairs of his own or in pursuing some purpose unrelated to his master's business, acting as much outside the scope of his employment as he would be were his working day ended, or his task completed....[21]

For that reason, an employer is not liable for an employee's intentional or criminal acts unless the employer either authorized or ratified the act.[22] These acts occur neither in the course of nor as a means to accomplishing the purpose of one's employment.

The district court found that smoking marijuana and engaging in sexual acts with minor boys were not within the scope of Cinel's employment as a Catholic priest. Hence, the court found that the Archdiocese and St. Rita's were not within Mississippi's jurisdiction for committing tortious conduct. Tichenor assigns error to that conclusion.

Tichenor argues that Cinel's activities were so closely connected in time, place, and causation to his duties as a Catholic priest as to warrant the imposition of vicarious liability on the Archdiocese and St. Rita's. In other words, even if he technically was "off duty" when on vacation in Mississippi, the nature of his calling required that he be a priest 24 hours a day, every day.

We reject the contention that Cinel was acting within the scope of his employment. Although a priest's duties are less susceptible to definition than, say, a store clerk, we can nonetheless outline the basics. It is a priest's duty to represent the word of God, as embodied in the Scriptures. The central aspect of that duty is to aid people in their relationship with God and, also, the Church. Moreover, it is his duty to help others—whose paths may have wandered—to find safety and security in the doctrines of Catholic theology.[23]

---

[21] *Seedkem South, Inc. v. Lee,* 391 So.2d 990, 995 (Miss.1980).

[22] *Thatcher v. Brennan,* 657 F.Supp. 6, 8 (S.D.Miss.1986), *aff'd,* 816 F.2d 675 (5th Cir.1987) (citing *Horton v. Jones,* 208 Miss. 257, 44 So.2d 397 (1950)). In some rare instances, an intentional or criminal act could be within the employee's scope of employment.

[23] Cinel himself described his duties as:

> Guidance. Well, it starts out with a ministerial function, which is saying mass, hearing confessions, giving communion, anointing the sick, funerals, weddings, all these, baptisms. Its a ministerial function. Then there is the preaching, which is

It would be hard to imagine a more difficult argument than that Cinel's illicit sexual pursuits were somehow related to his duties as a priest or that they in any way furthered the interests of St. Rita's, his employer. Instead, given Cinel's vow of celibacy and the Catholic Church's unbending stand condemning homosexual relations, Cinel's acts represent the paradigmatic pursuit of "some purpose unrelated to his master's business".[24]

That leaves only the question whether the Archdiocese or St. Rita's authorized or ratified Cinel's behavior. Originally a fallback argument, Tichenor's counsel concentrated on this proposition at oral argument. He argued vigorously that the circumstances of Tichenor's relationship and living situation at the rectory, with considerable contact with other pastors and lay personnel, should have made the other priests suspicious. That suspicion, he stated, translates into "constructive knowledge" which is tantamount to a "passive ratification" of Cinel's activities in Mississippi. This is a novel proposition to be sure. Summary judgment for the Archdiocese and St. Rita's was proper.

2. A Theory of Independent Liability

We next address whether the district court lacked personal jurisdiction over the Archdiocese and St. Rita's on the basis of Tichenor's claims of negligent hiring and supervision. Mississippi does require that employers exercise due care in hiring their employees. Under Mississippi law, an employer may be liable for an employee's negligence and resulting injuries "if the master knew or should have known" of the employee's misbehavior or incompetence.[25]

To support his claim of negligent hiring, Tichenor charges that the Archdiocese and St. Rita's should have known that Cinel had a history of sexual improprieties and that he would continue to pursue those activities when under their employ. With the aid of hindsight, Tichenor charges that a minimal background check would have revealed Cinel's pattern of homosexual activity with minors.[26]

---

done on Sunday. Then there is the counseling, preparation of people for baptisms, for confirmation, for all these things.

[24]*Seedkem South,* 391 So.2d at 995.

[25]*Thatcher,* 657 F.Supp. at 10; *Jones v. Toy,* 476 So.2d 30, 31 (Miss.1985).

[26]Cinel has greatly aided Tichenor's hindsight by providing abundant details of his sexual history during the course of his deposition. Until he was under oath, however, Cinel zealously

The record, however, permits of no conclusion that the defendants suspected that Cinel had engaged in sexual improprieties or might do so in the future. It is doubtful that the Archdiocese or St. Rita's knew anything about Cinel's darker side. Cinel was diligent in guarding his secrets. He did not disclose his extracurricular activities to anyone at anytime in the course of his employment and, from his perspective, with good reason. No tangible evidence in the form of a criminal history or discipline exists that would have been uncovered in a background check. Summary judgment was appropriate.

Tichenor next asserts that the Archdiocese and St. Rita's are subject to personal jurisdiction in Mississippi on the basis of their negligent failure to supervise Cinel. Mississippi law provides, however, that employers do not have a duty to supervise their employees when the employees are off-duty or not working.[27] Employers also are not liable for failure to supervise when the employee engages in independent criminal conduct which results in the plaintiff's injuries.[28] Moreover, an employer's duty to supervise does not include a duty to uncover his employees' concealed, clandestine, personal activities.

Just as Cinel had concealed his past sexual activities, he hid his relationship with Tichenor. In an attempt to show knowledge, Tichenor produced evidence that he lived in Cinel's rectory room for almost six months, taking meals, and having his laundry done by the rectory housekeepers. Tichenor engaged in social activities on several occasions with the other priests while staying at the rectory and consumed alcoholic beverages in their presence. There was also testimony that Cinel had other young boys visit him at the rectory frequently and took other young boys to Mississippi on weekends.

This evidence suggests that other priests and possibly lay personnel knew that Tichenor travelled to Mississippi with Cinel. That concession, however, is insufficient to establish that the

concealed any hint of his endeavors.

[27]*See Williams v. United States Fidelity and Guaranty Co.,* 854 F.2d 106, 109 (5th Cir.1988). Cinel was on vacation when he and Tichenor were together in Mississippi.

[28]*Id.*

defendants suspected a sexual relationship between the two. Tichenor himself testified that he and Cinel concealed their sexual relationship from the Archdiocese and the parishioners at St. Rita's.[29] Cinel did his part by fabricating the story that Tichenor was a homeless boy whom he had discovered sleeping under a highway bypass and had taken in as an act of charity.

It is unfortunate, to say the least, that the frequency with which these cases have surfaced suggests that the clergy at St. Rita's were naive. There is, however, nothing to indicate that the Archdiocese or St. Rita's knew or should have known of what was taking place in Cinel's private world.[30]

The burden of establishing personal jurisdiction resides with Tichenor.[31] That burden he has failed to carry.

*B. Are Tichenor's Claims Time-Barred?*

The district court held that Tichenor's claims against Cinel were time-barred. Mississippi has a one year statute of limitations which provides:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.[32]

Torts similar to those enumerated also are subject to the one-year limitations period.[33] In addition, the tort of invasion of privacy has been held subject to the one-year statute.[34] We conclude that, in this case, Tichenor's claim of illicit sex sufficiently resembles a claim of assault and battery to bring it within this statute's ambit. Hence, the one-year limitations period is applicable to Tichenor's claims of illicit sex, invasion of privacy, defamation, and libel.

---

[29]Tichenor testified that his relationship with Cinel was of the most personal nature and, thus, not fodder for disclosure to others.

[30]In fact, upon discovering the truth, they took swift action against Cinel.

[31]*Strong v. R.G. Industries, Inc.,* 691 F.Supp. 1017, 1018 (S.D.Miss.1988).

[32]Miss.Code Ann. § 15-1-35.

[33]*See Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 210-11 (5th Cir.1986).

[34]*See Mize v. Harvey Shapiro Enterprises, Inc.,* 714 F.Supp. 220, 224 (N.D.Miss.1989).

Mississippi law tolls the statute of limitation until the plaintiff reaches the age of 21 years.[35] Tichenor reached the age of 21 on November 12, 1986. His relationship with Cinel ended in December 1986. Hence, Tichenor had until December 1987 to assert his claims against Cinel. He filed suit in June 1991.

Recognizing that the numbers do not add up in his favor, Tichenor seeks refuge in the doctrine of *contra non valentem,* known familiarly as "the discovery rule".[36] Under this doctrine, the accrual of a plaintiff's cause of action is suspended until the plaintiff "discovers" the injury. Although a latent discovery could be made for a number of reasons, the catalyst often is a consultation with a psychologist or counselor who aids the plaintiff in memory access.[37]

The district court rejected Tichenor's *contra non valentem* argument on the grounds that Mississippi applies the discovery rule only "in actions for which no other period of limitation is prescribed."[38] The district court reasoned that, because Miss.Code Ann. § 15-1-35 (the one-year statute of limitations) applies to all of Tichenor's claims, the discovery rule has no application in this case. The immediate question, then, is whether all of Tichenor's claims are subject to that one-year statute.[39]

---

[35]*See* Miss.Code Ann. §§ 15-1-59, 1-3-21.

[36]Mississippi recognizes this doctrine and has codified its version at Miss.Code Ann. § 15-1-49.

[37]Much has been written on this interesting subject. *See generally,* Jocelyn Lamm, *Easing Access to the Courts for Incest Victims: Toward an Equitable Application of the Delayed Discovery Rule,* Yale L.J. 2189 (1991) (discussing discovery rule in an incest context).

[38]Miss.Code Ann. § 15-1-49 provides, in pertinent part:

> Limitations applicable to actions not otherwise specifically provided for. * * * (2) *In actions for which no other period of limitation is prescribed and which involve latent injury or disease,* the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury. (3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions. (Emphasis added).

[39]Another way of posing this question is to ask whether the Mississippi courts would extend the discovery rule to a claim based on illicit sex. If the tort of illicit sex is merely a novel way of alleging assault and battery, the discovery rule does not apply. The Mississippi Supreme Court has framed this as an inquiry into substance, not form:

The Mississippi Supreme Court has applied the discovery rule to what it has termed "inherently undiscoverable" intentional torts.[40] This patchwork approach requires some guessing as to what that court would do.[41] We can leave this question for the Mississippi courts, however: In the present matter, Tichenor's evidence that he experienced a latent discovery is insufficient to invoke the discovery rule.

Tichenor asserts that he did not perceive that his relationship with Cinel was injurious until he entered therapy in May 1991. Until then, Tichenor had perceived his relationship with Cinel as a positive aspect of his life, even though Cinel made Tichenor feel increasingly inadequate towards the end of their relationship.[42] He faulted himself for the problems in the relationship and lamented his inability "to satisfy someone as kindhearted and loving as a priest".

Tichenor has provided no evidence to counter the fact that he should have known of the basis for this suit at least by May 1989 when Sgt. Tolar notified him that the New Orleans District Attorney's office was investigating Cinel. Sgt. Tolar put Tichenor on notice that Cinel was being investigated for wrongdoing and that he may have broken the law. More, Tichenor was told that another boy upon whom Cinel foisted himself had already filed suit.[43] The discovery rule does not

---

> There can be no escape from the bar of the statute of limitations applicable to intentional torts by the mere refusal to style the cause brought in a recognized statutory category and thereby circumvent [the] prohibition of the statute.

*City of Mound Bayou v. Johnson,* 562 So.2d 1212, 1215 (Miss.1990) (citations omitted).

[40]*See Staheli v. Smith,* 548 So.2d 1299, 1303 (Miss.1989) (discovery rule applies to "that limited class of libel cases in which, because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered, that he had been defamed").

[41]Other states have struggled with this approach. *See* Comment, *Accrual of Statutes of Limitations, California's Discovery Exceptions Swallow the Rule,* 68 Calif.L.Rev. 106 (1980).

[42]Tichenor testified at his deposition that his relationship with Cinel was soothing. He received companionship, love, and security, all of which he had been denied in his difficult early years. (Tichenor's father was jailed for raping Tichenor's sister and abusing Tichenor's mother. Unable to care for her children, Tichenor's mother dropped him off at a shelter for runaway youths.)

[43]Tichenor does not contend that he had blocked out any memory of his relationship of Cinel; he asserts only that he did not develop an understanding of how his relationship with Cinel was injurious until after consulting a psychologist. The facts betray that understanding.

help Tichenor.

The district court determined that Tichenor's defamation and libel claims were time-barred as well. The statute of limitations for defamation and libel begins to run from the date that the allegedly libelous statement was published to a third person.[44] Hence, unlike Tichenor's other causes of action, the limitations period for these claims did not begin when Tichenor's relationship with Cinel ended in December 1986. The same is true for Tichenor's invasion of privacy claim which did not accrue until there was a public disclosure of private facts.[45]

Although Tichenor now contends that the district court failed to address the point at which these actions accrued, it was Tichenor who failed to raise them at the summary judgment stage. Except in rare circumstances, we must dismiss legal theories raised for the first time on appeal.[46]

We address one final statute of limitations question. In response to the district court's ruling, the Archdiocese and St. Rita's argue that, if the limitations period had run on Tichenor's claims against Cinel, it must also have run on Tichenor's claims against them. Accordingly, they seek to "expand" that ruling to include them. In the light of our holding that the Archdiocese and St. Rita's were not within the jurisdictional reach of the court, we need not pass on this proposition.

## II. CINEL v. USF & G

We turn now to the second half of this consolidated appeal. Cinel seeks from USF & G his costs of defense in connection with the Tichenor suit. Cinel argues that, in the main action, Tichenor stated a claim of vicarious liability against the Archdiocese and St. Rita's which sought to establish their liability for Cinel's wrongdoing. Because USF & G has a duty to defend the Archdiocese, Cinel argues, USF & G must have a concomitant duty to defend him.[47] The terms of the policy convince

---

[44]*See Brocato v. Mississippi Publishers Corp.,* 503 So.2d 241, 242 (Miss.1987).

[45]*See Young v. Jackson,* 572 So.2d 378, 382 (Miss.1990).

[46]This court's inquiry is limited to the summary judgment record before the trial court and parties may not advance new theories or raise new issues on appeal. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 n. 10 (5th Cir.), *reh'g denied,* 961 F.2d 215 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

[47]Originally, Cinel sought both his costs of defense and indemnification for damages. He has since abandoned his claim for indemnification.

us otherwise.

We start with the policy issued by USF & G to insure the Archdiocese. That policy states in part (our emphasis):

[USF & G] shall have the right and duty to defend *any suit against the Insured* seeking damages ... even if any of the allegations of the suit are groundless, false or fraudulent....

The question presented is whether Cinel is an "insured" for the purposes of this clause or, in the alternative, whether he can claim entitlement on some other basis.

The policy is plain on its face as to the "named insured". Under a heading with that title, it reads: "ARCHDIOCESE OF NEW ORLEANS AND ITS PARISHES AND INSTITUTIONS AND RELIGIOUS ORGANIZATIONS". Beyond the named insured, the policy also contains a section entitled "Persons Insured" which expands the definition of who is covered. That section provides, in part:

[I]f the **Named Insured** is designated in the declarations as other than an individual, partnership or joint venture, [then] the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such [are covered]. (Emphasis in original).

Cinel was not an officer, direct or, or a stockholder in the Archdiocese. Hence, he cannot claim coverage under this section.

There is, however, another section where Cinel hopes to find a safe haven. It addresses whether employees of the named insured are covered:

X. ADDITIONAL PERSONS INSURED

(B) Employee—Any employee (other than executive officers) of the named insured while acting within the scope of his duties as such....

Under the terms of this section, Cinel is entitled to coverage only for conduct within the scope of his duties. We expressly hold in the preceding part of this opinion, however, that the allegations in his complaint involve conduct well outside those parameters. Hence, USF & G had no duty to defend Cinel.

Cinel strenuously argues that our decision in *Jensen v. Snellings*[48] requires that we decide

_____

[48]841 F.2d 600 (5th Cir.1988).

this issue solely on the face of the complaint and the policy without resort to the facts as they have been developed.  Hence, he argues, Tichenor's allegations that Cinel acted within the scope of his employment are sufficient to trigger the duty to defend.[49]  Cinel is only partially correct, for *Jensen* applies only to suits against an insured.

> It is well-settled in Louisiana that an insurer's duty to defend suits filed ***against its insured*** is determined by a comparison of the allegations of the plaintiff's complaint and the terms of the policy, with the insurer having a duty to defend unless the allegations in the complaint unambiguously exclude coverage.[50]

*Jensen,* then, goes to the duty of an insurance company to defend its insured.

In the case at hand, as we have explained, the policy upon which Cinel relies is not between him and USF & G, it is between USF & G and the Archdiocese.  In this structure, Cinel is a third party beneficiary who receives coverage only when he acts within his duties.  We do no violence to the *Jensen* rule in looking beyond the complaint to ascertain whether he was an additional person insured.  Summary judgment was proper for USF & G.

III.

District Judge Martin Feldman wrote a careful, well-reasoned opinion supporting his judgments.  We AFFIRM both judgments of the district court.

---

[49]Cinel argues that Tichenor's respondeat superior claims against the Archdiocese and St. Rita's plainly allege that Cinel acted within the scope of his duties.

[50]*Id.* at 612 (emphasis added) (citations omitted).  When *Jensen* applies, we liberally interpret the allegations in the plaintiff's complaint.  Hence, if "the pleadings, taken as true, allege both coverage under the policy and the liability of the insured, the insurer is obligated to defend, regardless of the outcome of the suit or the eventual determination of actual coverage".  *Id.*