**Larry W. SMITH, Plaintiff,**

v.

**James Mike GARDNER and Board of Regents of San Jacinto College District, Defendants.**

**No. CIV.A. 4:97CV33LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

March 19, 1998.

---

David H. Linder, Joe Clay Hamilton, Hamilton & Linder, Meridian, MS, for Plaintiff.

William C. Hammack, Mark H. Tyson, Bourdeaux & Jones, Meridian, MS, for Defendants.

H. Wesley Williams, III, Holly Bridges Wiggs, Markow, Walker, Reeves & Anderson, Jackson, MS, for Board of Regents.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendant Board of Regents of San Jacinto College District (the College) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Larry W. Smith has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

In the early morning hours of March 17, 1996, plaintiff was involved in a two-car automobile accident with defendant Gardner in downtown Meridian. Plaintiff filed this action against Gardner and the College, as his employer, seeking to recover damages for injuries alleged to have been sustained in that accident, which plaintiff claims was caused by negligence on the part of defendant Gardner who, at the time of the accident, was employed as an assistant baseball coach by the College and was in Meridian with the team for baseball games that were scheduled to be played on March 16 and March 17, 1996. Plaintiff sued the College on the theory that it is vicariously liable for Gardner's alleged negligence. The College, however, seeks summary judgment contending that as a matter of law, it cannot be found liable for Gardner's acts since, as shown by the undisputed facts of record, Gardner was not acting within the course and scope of his employment with the College at the time of the accident.

Both parties apparently recognize that the facts pertinent to the "course and scope of employment" issue are essentially undisputed. What they dispute is the conclusion to be drawn from those facts. The court has considered the facts in light of the applicable law and concludes that, as a matter of law, the College is entitled to summary judgment.

On March 14, 1996, the College's baseball team, consisting of twenty-two players, head coach Chris Rupp, assistant coach Gardner and student assistant D.J. Wilson, left Houston, Texas bound for Mississippi, where the team was to play a series of games. The team traveled in three school-owned vans, which were driven by Rupp, Gardner and Wilson. After playing games on the Mississippi Gulf Coast on March 15, the team traveled to Meridian for a March 16 double-header with Meridian Community College. Following the games on March 16, the team checked into the Best Western in Meridian, ate dinner at a local restaurant, and returned to the hotel for the night. Around midnight, following the team's 11:00 p.m. curfew, Gardner decided to go out and buy some beer. Without advising anyone he was leaving, he took one of the school vans to a nearby gas station and bought a six-pack of beer. He then returned to the hotel where, over the next couple of hours, he drank approximately half of the six-pack. Around 3:00 a.m., Gardner decided to go out and buy some Skoal. So, he again left the hotel in the school van without telling anyone he was leaving and went back to the store for Skoal. After making the purchase, Gardner, rather than returning to the hotel, decided to check out the sights in downtown Meridian. At 3:22 a.m., while driving around downtown, he was involved in the accident that is the subject of this litigation.

When police officers arrived on the scene, an intoxilizer was administered to Gardner, which revealed that he had a blood alcohol level of .132, in excess of the legal limit of .10.

Gardner was taken to the police station, and Coach Rupp was contacted and advised of what had occurred. Rupp went to the station and posted bail for Gardner with money that had been wired by Gardner's mother, and the two then returned to the hotel, where they loaded the team and equipment into the remaining vans to travel to Meridian Community College for another game.

 As the court has observed, plaintiff in this case seeks to place liability for the accident on the College on the basis of respondeat superior, or vicarious liability. "Under Mississippi law, an employer is liable for the tortious conduct of his employees if that employee was acting within the scope of his employment." *Tichenor v. Roman Catholic Church of the Archdiocese of New Orleans,* 32 F.3d 953, 959 (5th Cir.1994). The test for determining whether an employee's tortious act is within the scope of his employment is "whether [the act] was done in the course of and as a means to the accomplishment of the purposes of his employment and therefore in furtherance of the master's business," *Odier v. Sumrall,* 353 So.2d 1370, 1372 (Miss.1978), or whether the employee was instead "engaged in affairs of his own or . . . pursuing some purpose unrelated to his master's business, acting as much outside the scope of his employment as he would be were his working day ended, or his task completed," *Seedkem South, Inc. v. Lee,* 391 So.2d 990, 995 (Miss.1980). *See also Tichenor,* 32 F.3d at 959 (quoting *Seedkem South*); *Thatcher v. Brennan,* 657 F.Supp. 6, 8–9 (S.D.Miss.1986);[1] *Odier,* 353 So.2d at 1372 (employer not liable if "at the time of the act the servant had abandoned his employment and was about some purpose of his own not incidental to the employment"). The Mississippi Supreme Court elaborated on this test in *Seedkem,* stating:

"The general rule is that if an employee who is delegated to perform certain work for his employer steps or turns aside from

---

**1.** As this court recognized in *Thatcher,* alternative articulations of the scope of employment test include "[w]hether the employee's conduct is 'so unlike that authorized that it is substantially different,' "[w]hether the act complained of is committed in the prosecution of the employer's business and within the scope of the employee's

authority," and [w]hether such act is in the furtherance of the business of the master and as an incident to the performance of the duties of the character or kind which he was employed to perform. *Thatcher v. Brennan,* 657 F.Supp. 6, 8–9 (S.D.Miss.1986) (citations omitted).

his master's work or business to serve some purpose of his own, not connected with the employer's business, or, as it is often expressed, deviates or departs from his work to accomplish some purpose of his own not connected with his employment— goes on a 'frolic of his own'—the relation of master and servant is thereby temporarily suspended, and the master is not liable for his acts during the period of such suspension, he is then acting upon his own volition, obeying his own will, not as a servant, but as an independent person, even though he intends to and does return to his employer's business after he has accomplished the purpose of his detour from duty."

*Seedkem,* 391 So.2d at 995 (quoting 35 Am. Jur., p. 989, Master and Servant, par. 555).

■ In support of its motion for summary judgment in the case at bar, the College argues that while Gardner was obviously an employee of the College on March 17, 1996, he was not acting within the scope of his employment at the time of the accident but rather was on a personal errand which constituted a distinct deviation from the responsibilities of his employment. In his response to defendant's motion, plaintiff argues, *inter alia,* that the "whole trip was part of Gardner's employment" since the trip, which was for the College's benefit,[2] required Gardner to be far from home for an extended period of time. Clearly, though, the law does not support the proposition that because Gardner was required to be out-of-town on a school-sponsored trip, then any and all acts he might undertake while out-of-town would necessarily occur within the scope of his employment, regardless of their relationship to the duties and purposes of his employment.

■ Plaintiff next points out that the College had to know that given the nature of the trip and the distance from home, the coaches' duties would extend beyond merely coaching baseball, and further knew that the coaches would have to use the school vans for purposes other than strictly going to and from the ball park. Observing further that the College did not specifically undertake to limit the coaches' use of the school vans on out-of-town trips and thus implicitly granted them discretion on how to use the vans, plaintiff concludes that this discretion might reasonably be found to include such errands as picking up some Skoal at a local store and then driving a short distance down the road. The fact is, after returning with the team from eating and retiring to his own hotel room for the night, Gardner was "acting as much outside the scope of his employment as he would be were his working day ended, or his task completed." *Seedkem South, Inc. v. Lee,* 391 So.2d 990, 995 (Miss.1980). And in thereafter drinking enough beer to become legally intoxicated and then driving around sight-seeing in downtown Meridian in the middle of the night while his co-workers and team members in his charge were fast asleep back at the hotel, Gardner was not in any sense about any conceivable business of the College; he was doing nothing toward the accomplishment of any purpose of his employment nor was he performing any act which might reasonably be considered incidental to his employment.[3] Rather, he was obviously a frolicking employee, "engaged in affairs of his own." *Cf. Breland & Whitten v. Breland,* 243 Miss. 620, 139 So.2d 365 (1962) (worker's compensation case holding that attorney who fell in tub while showering in hotel room where staying while out of town to investigate case for firm was not

2. Plaintiff states that the College derived certain benefits from having a baseball team and sending it on a trip such as the trip to Meridian, including student recruitment and promotion of the College.

3. Plaintiff argues that Gardner's trip to obtain some Skoal was "merely incidental to his employment" because "[i]t is a well known fact that all baseball teams use quite a bit of dip and/or chewing tobacco," so that "[p]rocurement of this tobacco product is an accepted part of baseball and would be incidental to Gardner's employ-

ment as a baseball coach." Defendant's appropriately term this argument "intriguing" in light of NCAA rules banning the use of tobacco products at any sports practice or game, including baseball. But even apart from that, plaintiff did not just drop by the store to pick up some Skoal for the team. Rather, after drinking half a six-pack of beer alone in his hotel room in the middle of the night, he went out to buy Skoal for himself, and then went riding around town. Nothing about this trip was incidental to his employment.

**712**

acting in course and scope of employment, for his activity was purely personal and disconnected from employment). Consequently, the College is not liable for Gardner's alleged negligence relating to the accident with plaintiff.[4]

For this reason, the court concludes that the defendant College's motion for summary judgment is well taken and should be granted. Accordingly, it is ordered that the College's motion for summary judgment is granted.

---

4. Having reached this conclusion, the court does not address the College's contention that it can have no liability for Gardner's acts since such acts constituted not only a clear violation of College policy against alcohol consumption but also a violation of the criminal laws of the State of Mississippi relative to driving while intoxicated.