[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #117
Presently before the court is the motion to strike counts first, second and third of the complaint; the motion is filed by defendants, Hartford Roman Catholic Diocesan Corp., Church of the Holy Spirit, and John T. O'Connor.
The motion should be granted as to the first count and denied as to counts second and third.
The plaintiff, Jane Doe, filed this action on July 28, 1997, alleging in an eight count complaint that she had suffered injury and damages due to the intentional and negligent acts of the defendants, Peter J. Zizka (Father Zizka); John T. O'Connor (O'Connor), pastor of the Church of the Holy Spirit; the Church of the Holy Spirit (Church), located at 183 Church Street, Newington, Connecticut; and the Hartford Roman Catholic Diocesan Corporation (Diocese), located at 134 Farmington Avenue, Hartford, Connecticut. The plaintiff alleges, inter alia, that from June, 1975 to September, 1979, Father Zizka counseled her "concerning spiritual and personal matters and held himself out as a person whom the plaintiff could trust and confide in during a particularly difficult period in her life. . .". During these counseling sessions, the plaintiff, a minor at the time, alleges that Father Zizka sexually abused her. Counts one, two, and three are against the Church, Diocese, and O'Connor. Count one claims that the Church and Diocese are liable for the plaintiff's injury and damages based upon the theory of respondent superior. Count two claims that the Church, Diocese, and O'Connor are liable for negligently hiring, training, retaining, and supervising Father Zizka. Count three alleges negligent infliction of emotional distress against the Church, Diocese, and O'Connor. Counts four through eight are against Father Zizka and are not at issue in this motion. CT Page 9728
On November 10, 1997, the Church, Diocese, and O'Connor filed a motion to strike the first three counts on the grounds that respondent superior cannot be proven as a matter of law, and that the claims sounding in negligence would require the trial court to excessively entangle itself in matters of religion, which is prohibited by the first amendment to the United States constitution. The plaintiff filed a memorandum of law in opposition to the motion to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief may be granted." Waters v.Autuori, 236 Conn. 820, 825; Novametrix Medical Systems, Inc. v.BOC Group, Inc., 224 Conn. 210, 214-15. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580; Waters v. Autuori, supra, 825. "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Waters v. Autuori, supra, 826; Westport Bank Trust Co. v. Corcoran, Mallin Aresco,221 Conn. 490, 496.
 I. Count One — Respondent Superior
Connecticut has "long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business."A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208. "Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business. . . But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law." Id., 207.
"While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business." A-G Foods, Inc. v.Pepperidge Farm, Inc., supra, 216 Conn. 210; Glucksman v.CT Page 9729Walters, 38 Conn. App. 140, 144, cert. denied, 235 Conn. 914, 655. "Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable."A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 210.
The defendants argue that they cannot be held vicariously liable for the alleged tortious acts of Father Zizka, as a matter of law, because it cannot be proven that Father Zizka was acting within the scope of his employment. They cite cases that held as a matter of law, when a priest is alleged to have sexually abused a minor, such action cannot be considered within the scope of his employment or in furtherance of the interests of the church. Nuttv. Norwich Roman Catholic Diocese, 921 F. Sup. 66 (D.Conn. 1995).
The plaintiff relies upon Mullen v. Horton, 46 Conn. App. 759, for the proposition that a church may be held vicariously liable for the sexual abuse of a priest under the doctrine of respondent superior. In Mullen v. Horton, a Roman Catholic priest, who was also a practicing psychologist, operated a therapy center. All profits from the center were given to the priest's order. Mullen v. Horton, supra, 761. During his treatment of one adult patient, the priest and the patient began a two and one-half year sexual relationship, with sexual contact occurring during the counseling sessions. Id. The Mullen court reasoned that the priest's counseling practices could be seen as "a misguided attempt at pastoral-psychological counseling, or even an unauthorized, unethical, tortious method of pastoral counseling, but not an abandonment of church business."Mullen v. Horton, supra, 765-66.[1] The court noted that the diocese defendants monetarily benefitted [benefited] from the priest's tortious conduct because he was obligated to directly turn over to the diocese any and all profits derived from his counseling office. Id., 770.
Mullen v. Horton, however, is distinguishable from the present case on the same reasoning that the Mullen court used to distinguish A-G Foods, Inc. v. Pepperidge Farm, Inc., supra,216 Conn. 200, and Nutt v. Norwich Roman Catholic Diocese, supra,921 F. Sup. 66. Unlike Mullen v. Horton, A-G Foods, Inc. v. PepperidgeFarm, Inc. and Nutt v. Norwich Roman Catholic Diocese both involved actions by employees which did not serve their employers due to the fact that the employers did not substantially benefit, directly or indirectly, from the illegal acts. See A-G Foods, Inc. v.Pepperidge Farm, Inc., supra, 216 Conn. 209; Nutt v. NorwichRoman Catholic Diocese, supra, 921 F. Sup. 71, in A-G Foods, Inc.CT Page 9730v. Pepperidge Farm, Inc., a case involving a consignment contract, a fraudulent scheme was devised by a franchise employee of Pepperidge Farm to charge grocery stores for food that was not delivered.A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 209. The court found that a claim under respondent superior was not factually supportable because no evidence was presented which demonstrated that actual sales had increased during the employee's fraudulent scheme or that sales decreased after discovery of the fraud. Id.
Our Supreme Court held that "any possible indirect benefit [the employer] might have received . . . was so de minimus that, as a matter of law, it does not support a conclusion that [the employee] acted within the scope of his employment and in furtherance of [his employer's] business." Id.
 Nutt v. Norwich Roman Catholic Diocese, supra, 921 F. Sup. 66, is more persuasive in its reasoning in denying a cause of action for respondent superior based upon allegations of sexual abuse by a parish priest. In that case the priest showed pornographic movies to two twelve year old altar boys, then molested them over a six year period when they were on out-of-town trips. Nutt v.Norwich Roman Catholic Diocese, supra, 69-70. The federal District Court stated: "Sexually abusive conduct amounts to the abandonment of the Church['s] business. As a matter of law, therefore, the alleged sexual abuse, even if true, [cannot] be said to further the [employer's] business and therefore is outside of the scope of employment." Nutt v. Norwich RomanCatholic Diocese, supra, 71; see also Milla v. Roman CatholicArchbishop of Los Angeles, (1986) 187 Cal.App.3d 1453, 1461232 Cal.Rptr. 685, 690, ("It would defy every notion of logic and fairness to say that sexual activity between a priest and a parishioner is characteristic of the Archbishop or the Roman Catholic Church . . . [or that] the Archbishop ratified the . . . acts of the priests.") (Internal quotation marks omitted.);Joshua S. v. Casey, 206 A.2d 839, 615 N.Y.S.2d 200 (1994) (alleged sexual assault by clergy was not within scope of employment); Byrd v. Faber, 57 Ohio St.3d 56, 565 N.E.2d 584, 588
(Ohio 1991) (church did not hire minister to sexually abuse congregation nor did it have reason to foresee such abuse);Kennedy v. Roman Catholic Diocese of Burlington, 921 F. Sup. 231,233 (D.T. 1996) (priest's sexual misconduct was not in scope of his employment); Tichenor v. Roman Catholic Church of NewOrleans, 32 F.3d 953, 959 (5th Cir. 1994) ("We reject the contention that [the priest] was acting within the scope of his employment."). CT Page 9731
As noted by the Appellate Court in Mullen, Nutt is distinguishable from Mullen because the alleged sexual abuse was perpetrated upon a minor. As the Appellate Court noted: "While a trier of fact could reasonably find that consensual sexual relations between two adults arising out of emotional, spiritual church sponsored counseling sessions represented a negligent and misguided effort at pastoral counseling, a trier of fact couldnot reasonably find that a priest's showing pornographic films to young boys and then criminally sexually molesting them in out-of-town motel rooms merely represented a negligent and misguided effort at pastoral counseling. The facts of Nutt clearly represent a situation in which the priest wholly abandoned his pastoral duties. Thus, Nutt represents one of those exceptional cases in which the servant's digression from duty is so clear cut that the disposition of the case is a matter of law." Mullen v.Horton, supra, 46 Conn. App. 770.
Mullen cannot be relied on in this case to find the defendants liable under a theory of respondent superior. The present case involves a minor who was sexually abused by a priest who was supposed to be counseling her through a difficult emotional period of her life. This case represents one of those "exceptional" cases where the employee's act was clearly a digression from duty and beyond the scope of employment. Nutt, like the present case, is representative of the characteristics of such cases: the victim is a minor, who legally lacks the capacity to consent to sexual relations, rendering the sexual relationship, as a matter of law, nonconsensual; the sexual abuse did not further the interests of the church; and the church did not directly or indirectly profit from the priest's actions. SeeNutt v. Norwich Roman Catholic Diocese, supra, 921 F. Sup. 70-71.
In ruling on a motion to strike, the court can only look to those facts alleged in the complaint, and it must construe those facts most favorably to the plaintiff. Faulkner v. UnitedTechnologies Corp., supra, 240 Conn. 580. A motion to strike is properly denied if the facts provable in the complaint would support a cause of action. Waters v. Autuori, supra,236 Conn. 826. This court cannot construe the facts to support a claim of respondent superior. The facts alleged in count one, even if proven, are insufficient to constitute actions within the scope of Father Zizka's employment or in furtherance of the church's business. See Nutt v. Norwich Roman Catholic Diocese, supra,921 F. Sup. 66. Accordingly, the defendants' motion to strike count one should be granted. CT Page 9732
 II. Counts Two and Three — Negligence and Negligent Infliction of Emotional Distress
In reference to the second count, negligent hiring, training, retention and supervision, the defendants argue that the allegation should be stricken "for the reason that such claim cannot be entertained by a civil court consistent with the provisions of the First Amendment to the United States Constitution as the court is prohibited from entangling itself in matters of religion, and/or matters that necessarily involve analysis and determination of ecclesiastical relationships, duties and responsibilities. . ." With respect to the third count, negligent infliction of emotional distress, the defendants move to strike the count on the ground that "such a claim cannot be entertained without excessive entanglement in matters of religion and/or matters that necessarily involve analysis and determination of ecclesiastical relationships and duties and responsibilities. . ."
"The First Amendment to the United States Constitution forbids any law respecting the establishment of religion, or prohibiting the free exercise thereof. . . The Free Exercise Clause prohibits excessive state entanglement with religion. . . Although no Supreme Court decision has determined the applicability of the Free Exercise Clause of theFirst Amendment as a defense for a religious organization's negligent conduct, the Court has held that the First Amendment does not create blanket tort immunity for religious institutions or their clergy, thus allowing clergy and clerical institutions to be sued for torts they commit." Nutt v. Norwich Roman Catholic Diocese,supra, 921 F. Sup. 73.
The court is aware of the recently released decision ofReynolds v. Zizka, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555222 (March 5, 1998, Aurigemma, J.). This court agrees with the decisions in Nutt andReynolds that the court's determination of an action against the movants based on their "negligent supervision" of a priest "would not prejudice or impose upon any of the tenets or practices of Catholicism." Nutt, supra, 74.
Accordingly, the motion is granted as to the first count and the first count is stricken; the motion is denied as to the second and third counts. CT Page 9733
Ronald J. Fracasse Judge of the Superior Court