## HAHN v. OWENS.

(Division A. June 8, 1936. Suggestion of Error Overruled Sept. 21, 1936.)

[168 So. 622. No. 32299.]

**Vollor & Teller**, of Vicksburg, for appellant.

W. W. Ramsey and Brunini & Hirsch, all of Vicksburg, for appellee.

Argued orally by **Landman Teller**, for appellant, and by **Edmund L. Brunini**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

This case arose in the chancery court of Warren county by bill in attachment under sections 173, 174, Code 1930, filed by appellee, Mrs. Owens, against appellant, Mrs. Hahn, a resident of the state of Florida. The bill was predicated upon appellee's claim for unliquidated damages for an unlawful assault and battery alleged to have been committed upon her by Jack Hahn, Jr. son of the appellant, while acting for and on her behalf in an effort, as alleged, to evict appellee from a house in Vicksburg owned by the appellant.

Appellant filed a sworn answer denying that any assault and battery had ever been committed by her son; denying the allegation of agency, and denying that Jack Hahn, Jr., acting for her, or in his individual capacity, committed any assault upon appellee, or offered her any other indignity. The answer further contained the statement: "That the said Jack Hahn, Jr., was directed and instructed by said defendant to ascertain the condition of her aforementioned property and the care taken thereof by complainant and to request the removal of the complainant in the event he deemed such a course advisable."

The house and lot belonging to appellant were levied on in the attachment proceedings.

The court heard the evidence and entered a decree of liability for the appellee against the appellant in the sum of one thousand five hundred dollars.

On November 5, 1934, Jack Hahn, Jr., appeared at the residence in Vicksburg owned by his mother which Mrs. Owens with her family was occupying at the time, having acquired possession thereof with the permission of a real estate agent, representing Mrs. Hahn, either as a tenant or as a caretaker of the property. The amount of rent appellee was to pay therefor was apparently insignificant. On the following day, Tuesday, Jack Hahn, Jr., requested appellee to vacate and surrender the premises by Thursday, to which she agreed, but complained that the time was short. She did not vacate the premises on Thursday, and, according to her testimony, and that of her witnesses, Jack Hahn, Jr., instituted a series of annoyances such as pulling out fuses so that the lights would not function; locking the door while the family was out so they could not re-enter, and on Sunday morning, when appellee desired to build a fire, she found her wood had been stored in an outhouse, and Jack Hahn, Jr., being present, notified her that she could not take this wood. She did not undertake, at that time, so to do, but at eleven o'clock on the same day she determined to secure wood to build a fire, and, thereupon, according to her contention, when she and Jack Hahn, Jr., were struggling for possession of the wood, he assaulted and beat her, as a consequence thereof, she was bruised in many places. She was corroborated by two witnesses, her daughter and daughter-in-law, who claimed to have seen the whole difficulty. Another witness, a man called in by the daughter to protect her mother, did not see any blows struck, but heard the argument. Appellee did not report this assault and battery to the police.

It is alleged that Jack Hahn, Jr., at some time during this controversy, procured some kind of writ issued by a justice of the peace to serve upon appellee. The nature of this writ is not shown.

Jack Hahn, Jr., stoutly denied that there was any such difficulty; that he did not interfere with the wood, and

did not assault appellee. He was corroborated by a lady he is alleged to have been visiting at the time.

There is other evidence unnecessary to detail here.

The appellant assigns two grounds for reversal: (1) That the decree of the chancellor is manifestly wrong, because the evidence offered on behalf of the appellee was unreasonable, and the conduct of the parties was unnatural and unreasonable, and (2) that the act of Jack Hahn, Jr., if he did assault appellee, was not within the scope of his employment or agency.

We deem it unnecessary to pass upon the first ground urged for reversal, and immediately address ourselves to the second which will dispose of the case.

The record is entirely silent on the question of agency, or the duties of Jack Hahn, Jr., except as set forth in the above statement from the pleadings on that subject, and the only light shed upon the scope of Jack Hahn's employment by his mother is to be found in the answer that he was directed and instructed to ascertain the condition of the house and lot and the care taken thereof by appellee, and to request her removal, in his discretion, if he deemed it advisable.

On the facts of this case, while it may be said that the course pursued by Jack Hahn, Jr., might be a way of furthering the master's business or interest, the serious question presented is whether or not it was within the scope of his employment.

It will be observed that the prime duty imposed upon Jack Hahn, Jr., was to request, in his discretion, the appellee to remove from the premises of the master. Can it be said that this limited, designated authority from a principal to an agent is an implied agency to beat a tenant severely, or even strike her at all, or that the master should be held liable therefor, if that is done? We are of the opinion that the doctrine of respondeat superior, on the facts of this case, did not warrant the court below in holding that assault and battery was

within the scope of Jack Hahn, Jr.'s, employment (or agency).

We have here pleadings carefully drawn, according to which Jack Hahn, Jr., was not invested with authority to procure an eviction of appellee from his mother's premises. Another case might be presented if he had been given such authority, and in an effort to evict had resorted to forcible means, even to the extent of committing a crime, since, in such a case, he might be held to have been acting within the scope of his employment or agency; but his agency in the case at bar was an exceedingly limited one, his duties being definitely prescribed. A principal or master may be held liable for the acts of an agent within the scope of his employment, although such acts may be consciously criminal or tortious. See Restatement of Law, Agency, section 231. But, even in that event, there are limitations unnecessary to be here discussed.

In the case at bar, it is a matter of degree, the question being whether or not the conduct is so unlike that authorized that it is substantially different. Restatement of Law, Comment, section 231; Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743. In this last-mentioned case the court said that the term "scope of employment" has no fixed, legal meaning, and that the ultimate question is whether it is just that the loss resulting from the servant's acts should be considered one of the normal risks of the business in which the servant is employed, which that business should bear. American Law Institute Restatement, Agency, section 454.

Jack Hahn, Jr., was not a general agent of the appellant, and the fact that he is her son does not add to the scope of his employment, and, from the facts of this record, it would be most unfair to hold that the mother, as a reasonably prudent person, should have had reason to anticipate that her son would commit an act of violent and vicious assault and battery upon a woman, and certainly it would not be one of the normal risks a person

would take in requesting another to do, or not to do, a particular thing. The rule of liability cannot be extended to an unreasonable degree. In Miller v. Teche Lines, Inc. (Miss.), 167 So. 52, 53, it was held that, "It is not enough that the act done may bear some relation to the authorized duties, Natchez, C. & M. R. Co. v. Boyd, 141 Miss. 593, 600, 107 So. 1, but the incidental connection should be so close and definite that it can be safely said that the damage resulting from the servant's act may be justly imposed upon the master as one of the normal risks which the business should bear, and that the act complained of was one which the master or principal could have reasonably anticipated as probable in view of the terms of the employment and the general situation, known to the master or principal or of which he had an adequate opportunity to know. Hand v. Industrial Life, etc., Co. (Miss.), 165 So. 616."

In the case at bar, it will be noted that the appellant had no other property in Vicksburg than this house and lot, and had no general course of business there and no general agency. Her son, Jack Hahn, Jr., was simply invested with the power to request the appellee to vacate the premises. To commit an assault and battery is, to say the least of it, a most unusual method of making a simple request, and Jack Hahn, Jr., acted, in so doing, in such an unusual way, and so different from that which he was authorized to do, that his act constituted an entirely different thing. An instruction to an agent to request a tenant to vacate is so unlike the conduct of Jack Hahn, Jr., in committing the assault and battery, if he did, that it is substantially different and cannot be said to be incidental thereto.

We conclude, therefore, that Jack Hahn, Jr.'s acts were not within the scope of his employment, and that the appellee could not recover from his principal or master.

Reversed and decree here for the appellant.