Walter **THATCHER**, Plaintiff,

v.

Bert **BRENNAN** and **Mead Johnson and Company**, Defendants.

Civ. A. No. J84–0610(L).

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 16, 1986.

Cy Faneca, Rushing & Guice, Biloxi, Miss., for plaintiff.

Jerry T. Johnston, Johnston & Younger, Brandon, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of the defendant, Mead Johnson and Company (Mead Johnson), for summary judgment. The plaintiff, Walter Thatcher, filed timely response to the motion and the court has considered the memoranda with attachments of both parties.

The plaintiff brought this action against Bert Brennan and Mead Johnson, jointly and severally, following an altercation between the plaintiff and Brennan which occurred on May 21, 1984. The alleged liability of Mead Johnson is predicated upon two theories: (1) *respondeat superior* and (2) negligent hiring. Mead Johnson has moved for summary judgment on both theories.

When considering a motion for summary judgment, the court must view the pleadings and evidentiary material, and reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, and the motion should be granted only where there is no genuine issue of material fact. *Walker v. U–Haul Co. of Miss.*, 734 F.2d 1068, 1070–71 (5th Cir. 1984). Although the pleadings and other material submitted on this motion do present some contested factual issues, the court is of the opinion that the disputed facts are not material to a resolution of this case and thus do not preclude summary judgment.[1]

1. A "material" fact is one which is dispositive, or which has some legal significance. *See Marshall v. Kimberly-Clark Corp.*, 625 F.2d 1300 (5th Cir.1980), *on remand, Equal Employment Opportunity Comm'n v. Kimberly Clark Corp.*, 531 F.Supp. 58 (N.D.Ga.1981); *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, *reh'g denied*, 691 F.2d 502 (5th Cir.1982).

## RESPONDEAT SUPERIOR

On May 21, 1984, Bert Brennan was an employee of Mead Johnson, having been hired February 8, 1982. As a medical sales specialist, Brennan was responsible for the sale of Mead Johnson pharmaceutical products, primarily through physician specifications. Although he lived in Covington, Louisiana, Brennan's sales territory included Hinds County, Mississippi. He was required by Mead Johnson to be in Jackson, Mississippi at least once every five weeks to make calls on physicians. Due to the travel required, Brennan was provided an automobile by his employer and was reimbursed for his travel expenses, including the expenses for his trips to Jackson.

On the morning of May 21, 1984, Brennan had made some physician sales calls in New Orleans, Louisiana. About 12:30 or 1:00 P.M., he left his home in Louisiana and drove to Jackson. Upon arrival, Brennan checked into a hotel, got some paper work "squared away," and then drove to the post office to mail it. Upon leaving the post office, Brennan turned his automobile right onto a street in front of Thatcher, and a disagreement began, which continued until the cars stopped and a fight took place in the parking lot of a jewelry store. After this incident, which occurred about 5:45 P.M., Brennan returned to his motel. For purposes of this motion, Mead Johnson has admitted that Brennan instigated the altercation without provocation from the plaintiff.

The paper work which Brennan mailed consisted of physician call cards and a sample inventory. The parties disagree as to whether Brennan was in fact *required* to mail these papers. Mead Johnson claims that these items could have been mailed at some other time and/or place, whereas the plaintiff asserts that Brennan was required by Mead Johnson to mail the call cards daily. The court is of the opinion that this is immaterial since, whether required or not, Brennan did mail the papers and, in doing so, was performing his work as a Mead Johnson sales representative.

When Brennan left the post office, he was returning to his hotel where he had planned to make dinner arrangements with a doctor friend. As such social interaction with physicians is encouraged by Mead Johnson, it may be reasonably inferred that Brennan was returning to the hotel to perform business-related activities. Nevertheless, the parties agree that while Brennan was in Jackson, he was not required by Mead Johnson to follow any specific schedule or agenda. Importantly, it is also agreed between the parties that nothing about Brennan's altercation promoted the sale of pharmaceuticals for Mead Johnson.

█ It is clear in Mississippi that an employer may be held liable for the intentional acts of its employees if the employer either authorized the act prior to or ratified the act after its commission, or the act was committed within the scope of employment. *Horton v. Jones*, 208 Miss. 257, 44 So.2d 397 (1950). Since there is nothing to indicate that Mead Johnson either authorized or ratified Brennan's intentional assault and battery upon Thatcher, Brennan must have been acting within the scope of his employment in order for Mead Johnson to be held liable.

In *Loper v. Yazoo and M.V.R. Co.*, 166 Miss. 79, 145 So. 743 (1933), the Mississippi Supreme Court recognized that the phrase "scope of employment" which is used to determine an employer's liability for the acts of its employees has no fixed legal or technical meaning. Instead, the court has enunciated various tests for determining whether particular conduct of an employee is within the scope of employment. These tests include, for example,

(1) Whether the employee's conduct is "so unlike that authorized that it is substantially different," *Hahn v. Owens*, 176 Miss. 296, 168 So. 622 (1936);

(2) Whether the act complained of is committed in the prosecution of the employer's business and within the scope of the employee's authority, *Horton v. Jones*, 208 Miss. 257, 44 So.2d 397 (1950);

(3) Whether such act is in the furtherance of the business of the master and as an incident to the performance of the duties of the character or kind which he was employed to perform, *White's Lum-*

*ber and Supply Company v. Collins,* 186 Miss. 659, 191 So. 105 (1939); and

(4) Whether the act was done in the course of and as a means of accomplishing the purposes of the employment and, therefore, in furtherance of the master's business. *Odier v. Sumrall,* 353 So.2d 1370 (Miss.1978).

These "tests" provide some guidance, but often a fine line separates those acts which are within and those which are without the scope of employment. It has been noted that,

> The most difficult questions arise where the servant, for strictly personal reasons and not in furtherance of his employment, loses his temper and attacks the plaintiff in a quarrel which arises out of the employment—as where, for example, a truck driver collides with the plaintiff, and an altercation follows. Here, unless some non-delegable duty can be found, the older rule denied recovery, and this is still the holding of the majority of the decisions. There has been a tendency in the later cases, however, to allow recovery on the ground that the employment has provided a peculiar opportunity and even incentive for such loss of temper[.]

Prosser and Keeton, *The Law of Torts,* 465–66 (5th ed. 1984).

The Fifth Circuit has recently noted that an employee is not necessarily acting outside the scope of his employment when he commits an intentional tort or criminal act. Rather,

> Acts committed by a servant are considered within the scope of employment when they "are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." Prosser and Keeton, *The Law of Torts,* 502 (5th ed. 1984). Among the factors considered to determine whether the acts are within the scope of employment are: (1) the time, place and purpose of the act; (2) its similarity to acts which the servant is authorized to perform; (3) whether the act is common-

ly performed by such servants; (4) the extent of departure from normal methods; (5) the previous relations between the parties; and (6) whether the master would reasonably expect such an act would be performed. *Id.*

*Domar Ocean Transportation, Ltd. v. Independent Refining Co.,* 783 F.2d 1185, 1190 (5th Cir.1986). In the instant case, Brennan was authorized, expected, and even required to drive an automobile as part of his employment. However, he was not authorized to assault other persons, and there is nothing in the previous relationship between Brennan and Mead Johnson which would indicate that such conduct was acceptable. Moreover, the act is not one which is commonly performed by Mead Johnson sales personnel, nor can it be said to be a "normal" method of selling, or similar to acts which Brennan was authorized to perform. The most that can be said is that the assault was within the "time and place" of employment. The "purpose" of the assault was not to further any of Mead Johnson's interests but, rather, was intended to satisfy Brennan's purely personal objectives.

The plaintiff has cited several cases in support of his contention that Mead Johnson should be held liable under the theory of *respondeat superior.* The first, *Pritchard v. Gilbert,* 107 Cal.App.2d 1, 236 P.2d 412 (1951), involved a factual situation similar to that presented in the case *sub judice.* In *Pritchard,* as in the present case, the employee was a salesman who was operating an automobile furnished him by his employer. While returning from a sales meeting, the employee, believing his rights on the highway to have been violated, turned his car, pursued the plaintiff and, after causing him to stop, gave him a severe beating. The California court held that the fact that the assault did not further the employer's interest and that the employee did not thereby intend to further such interest did not absolve the employer of liability since the injury resulted from a dispute arising out of the employment. *Pritchard,* 236 P.2d at 414 (*citing Carr v. Wm. C. Cromwell Co.,* 28 Cal.2d 652, 171 P.2d 5, 6 (1946)). The court further stated

that "it is not necessary that the assault should have been made 'as a means, or for the purpose of performing the work he (the employee) was employed to do.'" *Id.* In this regard, the California approach differs markedly from that taken by the Mississippi courts in that for the master to be held liable for the intentional conduct of an employee in Mississippi, the servant must be acting in furtherance of the employer's business. *See Odier v. Sumrall,* 353 So.2d 1370 (Miss.1978).

Another case relied on by the plaintiff is *Marston v. Minneapolis Clinic of Psychiatry and Neurology Ltd.,* 329 N.W.2d 306 (Minn.1982). That case is, however, unpersuasive since Minnesota, like California, takes a broader view than Mississippi of an employer's liability under *respondeat superior* and does not require that the employee have been motivated by a desire to further the employer's business.[2] In *Prairie Livestock Company, Inc. v. Chandler,* 325 So.2d 908 (Miss.1976), the Mississippi Supreme Court noted that where the act complained of is committed by the employee as an individual on his own account, or done solely for the employee's own purpose and not in furtherance of the employer's business, then such act is without the scope of employment and the employer is not liable. *Prairie Livestock,* 325 So.2d 908, 910 (*quoting Canton Cotton Warehouse Co. v. Pool,* 78 Miss. 147, 28 So. 823 (1900)). In the present case, Brennan was acting for his own purpose in attacking the plaintiff. He was not acting in his capacity as a Mead Johnson employee, but rather in his individual capacity. Additionally, the parties agree that the altercation did not advance any of Mead Johnson's interests. The fact that the attack occurred while Brennan was engaged in Mead Johnson business, or that he was driving a car furnished by Mead Johnson, does not preclude

a finding that he was not within the scope of employment. *See Canton Cotton Warehouse Co. v. Pool,* 78 Miss. 147, 157, 28 So. 823, 824 (1900). Further, the court observes that while an employer may reasonably be held accountable for the intentional conduct of its employees where such conduct is within the scope of employment, the employer cannot be the insurer of safety of all persons with whom the employee comes in contact. For the foregoing reasons this court is of the opinion that the assault by Brennan was not within the scope of his employment. The connection between the assault and the business of Mead Johnson is tenuous at best and wholly insufficient to impose liability on Mead Johnson.

## NEGLIGENT HIRING

The plaintiff has also asserted a claim against Mead Johnson on the basis of negligent hiring. He contends that Mead Johnson either knew or should have known of Brennan's alleged propensity for violence but nevertheless employed Brennan, placed him in contact with residents of Hinds County and directed him to travel the streets of Jackson for the purpose of selling pharmaceutical products "even though he has violent and malicious personality traits."

 Although it does not appear that the Mississippi Supreme Court has addressed the issue of negligent hiring in connection with an employee's intentional tort, in *Jones v. Toy,* 476 So.2d 30 (Miss.1985), the court recognized an employer's duty to exercise due care in hiring, and held that an employer may be charged with an employee's negligence and be liable for resulting injuries "if the master knew or should have known" of the employee's incompetence. *Jones,* 476 So.2d at 31. This court is of the

---

**2.** Prior to 1973, Minnesota imposed liability only where it was shown that the employee's acts were motivated by a desire to further the employer's business. *Marshton,* 329 N.W.2d at 309. However, in *Lange v. National Biscuit Co.,* 297 Minn. 399, 211 N.W.2d 783 (1973), the Minnesota court adopted the rule that "an employer is liable for an assault by his employee when the source of the attack is related to the

duties of the employee and ... occurs within work related limits of time and place," and abandoned the motivation test. *Lange,* 297 Minn. at 405, 211 N.W.2d at 786. Mississippi appears to adhere to what the Minnesota court termed as the "motivation" test as it holds that the act must be in the furtherance of the employment.

opinion that the Mississippi Supreme Court would apply this same standard if confronted with the issue of an employer's liability for negligent hiring of a person with a propensity for violence. Accordingly, the court concludes that in this case plaintiff must prove that (1) Brennan had a propensity for violence, (2) Mead Johnson knew or should have known of such propensity, and (3) Mead Johnson, in disregard for the rights of those persons with whom Brennan could reasonably be expected to come into contact, hired Brennan, either negligently or with callous disregard for the rights of such persons.

In *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 861 n. 1 (5th Cir.1985), the Fifth Circuit noted that under Mississippi law, liability cannot be imposed upon an employer under a theory of negligent entrustment unless the employee is first found to be negligent. Similarly, under a theory of negligent hiring, the plaintiff must show that the employee is either incompetent or unfit in order to impose liability on the employer. *See Jones*, 476 So.2d at 31. In this case, the plaintiff alleges that Brennan had a propensity for violence. "Propensity" is defined as "a natural inclination: innate or inherent tendency." Webster's Third New International Dictionary 1817 (Third Edition 1981). It is not sufficient that the plaintiff prove a mere possibility of violence. *See Offshore Logistics, Inc. v. Astro-Marine, Inc.*, 482 F.Supp. 1119, 1121 (E.D.La.1980). Rather, there must be proof that the employee/assailant was a person of known vicious character or one whom the employer should have known had a vicious character. *Schultz v. Evelyn Jewell, Inc.*, 476 F.2d 630, 631 (5th Cir.1973). The plaintiff herein has failed to demonstrate any propensity for, or likelihood of, violence on the part of Brennan and has further failed to produce sufficient evidence that Mead Johnson knew, or had reason to know, of any such propensity for violence. The only evidence of actual violent conduct by Brennan is the affray between him and the plaintiff which is the subject of this action. Plaintiff has directed the court's attention to no other incident, either preceding or following his

being hired by Mead Johnson, which would tend to show that Brennan was a violent or vicious individual. Instead, plaintiff asserts that the results of a personality inventory test and an adaptability test taken by Brennan reveal his propensity for violence.

These tests were administered to Brennan by Mead Johnson personnel prior to his being hired in February 1982. An evaluation of the test results led Mead Johnson's personnel employees to the following conclusion:

Bert has the potential to be a moody, opinionated and headstrong and early in his life might even have been considered spoiled or immature ... Bert is a person of high aggression....

Overall profile appears to be significantly different from the temperament profile of most sales candidates we see. It appears to reflect a young person undergoing a great deal of emotional and personal stress and turmoil.

Plaintiff contends on the sole basis of this evaluation that Brennan, as a person of "high aggression," did indeed have a propensity for violence, and that Mead Johnson had knowledge of this propensity as a result of its own analysis of Brennan's personality inventory tests.

The plaintiff has supplied the court with an analysis of the test results by a clinical psychologist, J. Donald Matherne, Ph.D. Dr. Matherne states that upon review of the information provided him, it is "quite apparent that ... Wilbert Brennan, manifests evidence of very serious emotional and personality instability." He further states that the "test findings clearly indicate an individual lacking in self-control, socialization skills and responsibility," and that Mead Johnson apparently hired Wilbert Brennan with full knowledge of his propensity for aggression as well as his propensity for violent behavior. He further opines that Wilbert Brennan should not have been employed by Mead Johnson as a pharmaceutical sales representative since "one would predict with a high degree of clinical probability that this individual would have manifested, within a period

of time, significant adjustment problems, work inefficiency and problems involving self control." The court is of the opinion that the test results alone did not provide a sufficient basis to put Mead Johnson on notice of any purported violent tendencies of Brennan. While Brennan may have been accurately evaluated as a person of "high aggression," the term "aggression" is not synonomous with "violent."

The tests in question were administered in late 1981, and the evaluation by Mead Johnson personnel was rendered in January 1982. The altercation between Thatcher and Brennan did not occur until May 1984, after Brennan was hired, and during this two-year period there is no evidence that Brennan demonstrated any violent behavior whatsoever. One who is volatile and malicious and who has a propensity for violence would presumably have manifested such aberrant traits over a two-year period. Yet, during the interim between the time that Brennan was hired and the date of the altercation with Thatcher, there were no incidents of violent behavior. Therefore, even assuming Mead Johnson, at the time it hired Brennan, could have reasonably concluded on the basis of the tests that Brennan had a potential for violence, the total lack of evidence of any violent conduct by Brennan over the succeeding two years certainly belies any claim of negligent hiring under the circumstances of this case.

Accordingly, it is ordered that the motion for summary judgment of defendant Mead Johnson is granted.