Clem Neadham ("Jim") PATTON, III, Plaintiff,

v.

SOUTHERN STATES TRANSPORTATION, INC. and Tommy Nash, Defendants.

Civil Action No. 3:95–cv–751BN.

United States District Court, S.D. Mississippi, Jackson Division.

July 16, 1996.

Dale Danks, Jr., Keyes, Danks, Coxwell & Leonard, Jackson, MS, for Clem Neadham Patton, III.

John S. Gonzalez, Daniel, Coker, Horton & Bell, Jackson, MS, for Biedenharn Bottling Group.

James P. Streetman, III, Lee C. England, Clark, Scott & Streetman, Jackson, MS, for defendants.

## OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Motion for Summary Judgment filed by the Defendant Southern States Transportation, Inc. ("Southern States"). Having considered the Motion, Plaintiff's Response, Defendant's [1] Rebuttal, all attachments to each, and supporting and opposing memoranda, the Court finds that the Motion is well taken and should be granted.

### I. Factual Background and Procedural History

On the morning of June 30, 1995, the Plaintiff, Clem Neadham ("Jim") Patton ("Patton"), arrived for work at the Coca–Cola Bottling Company in Jackson, Mississippi ("Coca–Cola"), where he was the fleet manager. Defendant Tommy Nash ("Nash") was also on the premises at the time, having just completed a delivery for Southern States to Coca–Cola. Nash was in the cab of his tractor-trailer and began yelling at Patton. Nash then climbed out of the truck, approached Patton and accused Patton of calling him a bastard. Patton responded, "No, sir. I did not call you anything." Patton Dep. at 8–10, attached as Exhibit C to Defendant's Motion. Patton then requested that Nash tell him his name and the name of his dispatcher. When Nash refused, Patton walked to the tractor-trailer to copy the name of the company for which Nash worked. Id. Before Patton could accomplish this task, Nash hit him on the left side of his face.[2] Id.

Patton filed suit against Nash and Southern States in the Circuit Court of the First Judicial District of Hinds County, Mississippi, alleging assault and battery against Nash, and asserting liability against Southern States through the doctrine of respondeat superior and for negligently hiring Nash. Southern States removed the action to this Court on October 11, 1995, asserting diversity jurisdiction of the parties pursuant to 28 U.S.C. § 1332. Plaintiff did not contest the removal. Southern States has now filed a Motion for Summary Judgment asserting that it should not be held liable for Nash's assault upon Patton.

### II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); see also Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir.1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's. claim. Id. As to issues on which the non-moving party has the

---

**1.** Unless otherwise noted, Defendant as used in this Opinion and Order will refer only to Defendant Southern States.

**2.** The record is not clear concerning whether Nash hit Patton with his fist or with some foreign object. In any event, Patton was temporarily blinded in both eyes and allegedly sustained severe injuries as a result of the assault by Nash.

burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–53. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

▮▮▮ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. *Analysis*

Southern States asserts that it should not be held liable on the basis of *respondeat superior* for the actions of Nash in assaulting the Plaintiff. According to Southern States, Nash was not working within the course and scope of his employment when he intentionally assaulted Patton. Southern States alternatively asserts that the doctrine of *respondeat superior* is not applicable in this case because Nash was an independent contractor, and not an employee of Southern States. Finally, Southern States contends that it should not be held liable for the negligent hiring of Nash because there is no evidence that Nash had a propensity for violence, and if he did, there is no evidence that Southern States knew or should have known of this propensity.

Patton asserts that under Mississippi law,[3] there is at least a question of fact concerning whether Nash was an employee of Southern States at the time he assaulted Patton. Although Patton relies on several cases from other jurisdictions, he contends that Missis-

sippi law would likewise require a jury to decide whether Nash was an employee of Southern States when the incident giving rise to this suit occurred. Patton further asserts that if Nash was an employee of Southern States, genuine issues of fact exist concerning whether Southern States ratified the actions of Nash and should thus be held liable for those actions. Finally, Patton asserts that Nash had a criminal record which shows a propensity for violence, and Southern States either knew or should have known of this record and should not have hired Nash as a driver.

The Court finds that genuine issues of material fact exist concerning whether Patton was an employee of Southern States or merely an independent contractor. For this reason, the Court will assume, for the purposes of this Motion, that Patton was an employee of Southern States when the incident giving rise to this lawsuit occurred. Even proceeding under this assumption, the Court finds that Southern States is entitled to summary judgment.

In *Thatcher v. Brennan,* 657 F.Supp. 6 (S.D.Miss.1986), *aff'd,* 816 F.2d 675 (5th Cir. 1987), this Court decided a case with facts quite similar to this case. In that case, Bert Brennan was a medical sales specialist for Mead Johnson and Company responsible for selling pharmaceutical products. *Id.* at 8. In this capacity, Brennan had a sales territory and was provided with an automobile by his employer. *Id.* During one of his sales trips, Brennan went to the post office to mail some paperwork as a part of his job with Mead Johnson. When he left the post office, Brennan turned his automobile into the street in front of the plaintiff's vehicle and a disagreement began. *Id.* The disagreement continued until both vehicles stopped, and Brennan and the plaintiff became embroiled in a fight in the parking lot of a nearby jewelry store. *Id.* Given these facts, this Court found that Brennan was not acting within the course and scope of his employment and that Mead Johnson neither autho-

---

3. The parties agree that because the jurisdiction of this Court is based upon diversity of citizenship, the substantive law of Mississippi applies.

*See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

rized nor ratified the actions of Brennan in fighting with the plaintiff. *Id.* at 10.

The *Thatcher* case summarizes Mississippi law regarding the issues in this case. The Court has not found and the parties have not cited any prior or subsequent Mississippi law to the contrary. While the Plaintiff cites many cases from other jurisdictions, these cases do not comport with Mississippi law. Because the Court is *Erie* bound to apply Mississippi law in this diversity case, the Court will adhere to the law as set forth in the *Thatcher* case and the Mississippi cases cited therein.

■ In Mississippi, an employer may be held liable "for the intentional acts of its employees if the employer either authorized the act prior to or ratified the act after its commission, or the act was committed within the scope of employment." *Thatcher*, 657 F.Supp. at 8 (citing *Horton v. Jones*, 208 Miss. 257, 44 So.2d 397 (1950)). Patton does not assert that Southern States authorized Nash to assault him. The Court must therefore determine whether Nash was acting within the course and scope of his employment when he assaulted Patton, and if not, whether Southern States ratified the actions of Nash.

■ In *Thatcher*, this Court set forth various tests for determining when an employee is acting within the course and scope of his employment. These tests include,

(1) Whether the employee's conduct is "so unlike that authorized that it is substantially different," *Hahn v. Owens*, 176 Miss. 296, 168 So. 622 (1936);

(2) Whether the act complained of is committed in the prosecution of the employer's business and within the scope of the employee's authority, *Horton v. Jones*, 208 Miss. 257, 44 So.2d 397 (1950);

(3) Whether such act is in furtherance of the business of the master and as an incident to the performance of the duties of the character or kind which he was employed to perform, *White's Lumber and Supply Company v. Collins*, 186 Miss. 659, 191 So. 105 (1939); and

(4) Whether the act was done in the course of and as a means of accomplishing the purposes of the employment and, therefore, in furtherance of the master's business. *Odier v. Sumrall*, 353 So.2d 1370 (1978).

*Thatcher*, 657 F.Supp. at 8–9.

In this case, Nash was authorized to make deliveries for Southern States. Plaintiff admits that Nash had already made his delivery to Coca–Cola when the incident occurred, and that the incident was not related in any way to the delivery. Patton Dep. at 13, attached as Exhibit C to Defendant's Motion. Thus, the assault on Patton by Nash was not "incident to the performance of the duties of the character or kind which [Nash] was employed to perform." *Thatcher*, 657 F.Supp. at 8 (citing *Collins*, 191 So. at 105). The assault was not the normal method used by Nash in making his deliveries, neither was it an act which is commonly performed by Southern States personnel in performing their jobs. *Id.* at 9. "The most that can be said is that the assault was within the 'time and place' of employment. The 'purpose' of the assault was not to further any of [Southern States'] interests but, rather, was intended to satisfy [Nash's] purely personal objectives." *Id.*

Plaintiff concedes that the factors set forth in *Thatcher* should be considered in determining course and scope of employment. However, Plaintiff alleges, in a conclusory fashion, that these factors should be analyzed by a jury. The Court finds this argument unpersuasive. Patton has failed to produce any evidence to support his allegation that Nash was acting within the course and scope of his employment when he assaulted Patton. Therefore, Southern States is entitled to judgment as a matter of law on this issue.

■ The Court must next determine whether Southern States ratified the actions of Nash by failing to take any disciplinary action against him for assaulting Patton. Southern States has various policies in place governing how an employee may be disciplined in the event of misconduct. *See* Company Policy Manual and Employee Work Rules and Regulations (Drivers Only), attached respectively as Exhibits E and F to Plaintiff's Response. Although the Employ-

ee Work Rules and Regulations specify that they apply to drivers only, the Company Policy Manual makes no such distinction. The Court will therefore assume that the Company Policy Manual applies to all employees.[4]

The Company Policy Manual provides as follows:

Any of the following violations will not be tolerated and may result in immediate discharge.

. . . .

11. Involvement in a serious crime.

. . . .

18. Assaulting, threatening, intimidating, coercing, or interfering with any employee, customer, or vendor.

Company Policy Manual at 91–92. This manual also sets forth various steps of disciplinary action which include a verbal warning, written reprimand, disciplinary layoff and discharge. *Id.* at 27–28.

In the Employee Work Rules and Regulations, under a subsection entitled of Work Rules and Regulations (All Employees), the following language appears:

The following violations will be sufficient grounds for disciplinary action ranging from reprimand to immediate discharge, depending on the seriousness of the offense in the judgment of management:

. . . .

9. Causing injury to a person or damage to a product due to carelessness, negligence or incompetence.

Employee Work Rules and Regulations at 3.

There is no dispute that Nash received a copy of the Work Rules and Regulations on March 3, 1995, and again on April 22, 1995. *See* Exhibits G and H to Plaintiff's Response.[5] There is also no dispute that Fred Human, the General Manager for Southern States, did not discipline Nash after learning of the assault. Human Dep. at 32. Patton asserts that Southern States ratified the actions of Nash by not disciplining him in accordance with its policies after Nash assaulted Patton. As stated previously, Southern States fails to address the issue of ratification, but asserts that it did not authorize Nash to assault Patton. Patton sets forth the following "definition" for ratification but offers no citation of authority for such definition: "In order for Human to have ratified the actions of Nash, he must have the capacity to ratify, accept the entire transaction, and know or reasonably should have known all the material facts at the time of the affirmance." Plaintiff's Memorandum in Opposition at 8.

The parties have not submitted, and the Court has not found, any Mississippi case which defines when an employer may be held liable for the actions of an employee because the employer has ratified those actions. The Court has found at least one case where the Mississippi Supreme Court set forth certain evidence and concluded that the jury was not in error in concluding that such evidence suggested ratification. *Royal Oil Co., Inc. v. Wells,* 500 So.2d 439, 446 (Miss.1986). This case, however, provides no definition of ratification. The Court therefore finds that if presented with this specific question, the Mississippi Supreme Court would adopt the following definition of ratification:

Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

Restatement (Second) of Agency § 82 (1958). *See also Estate of Bras v. First Bank & Trust Co.,* 821 P.2d 387, 391 (Okla.Ct.App. 1991) (concluding that a corporation which

---

4. Southern States did not address the issue of ratification in its Rebuttal to the Plaintiff's Response. The Court must therefore construe the various employee manuals as applying to all employees as such a construction is in the light most favorable to the Plaintiff. *See Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1504 (5th Cir.1988); *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir.1987).

5. Once again, the Court is not sure whether Nash also received a copy of the Company Policy Manual but will construe the facts in the light most favorable to Patton and assume that Nash received a copy of both manuals.

acquires knowledge of certain wrongful acts of an agent and accepts and retains the benefits of those wrongful acts is deemed by law to have ratified the tortious acts); *Southwestern Bell Telephone Co. v. Wilson,* 768 S.W.2d 755, 764 (Tex.Ct.App.1988) (stating that "[r]atification may occur when a principal receives the benefits of the transaction after acquiring full knowledge"). This definition is the most logical definition to apply to the circumstances in this case because Patton is asserting that Nash was acting as the agent of Southern States.

The Court finds that the subsequent actions of Southern States do not constitute ratification as that term is defined by the Restatement (Second) of Agency. Nash did not assault Patton on behalf of Southern States. Nor did Southern States originally authorize Nash to assault Patton on its behalf. The definition of ratification impliedly assumes that a principal cannot ratify an act which it would not have authorized in the first place. The Court agrees with this assumption. Furthermore, no benefits accrued to Southern States because of the assault by Nash, its purported agent, upon Patton. The fact that Southern States did not discipline Nash for his assault upon Patton is not sufficient evidence by itself to support Patton's theory that Southern States ratified the actions of Nash. For these reasons the Court finds that no genuine issue of material fact exists concerning the ratification issue, and Southern States is therefore entitled to summary judgment on this issue.

■ Finally, the Court must decide whether Southern States is subject to liability for the negligent hiring of Nash. This Court in *Thatcher* concluded that the Mississippi Supreme Court would apply the "same standard if confronted with the issue of an employer's liability for negligent hiring of a person with a propensity for violence," as that court has applied to liability of an employer for negligently hiring one who is incompetent. *Thatcher,* 657 F. Supp. at 10–11 (citing *Jones v. Toy,* 476 So.2d 30, 31 (Miss. 1985) (concluding that an employer who knew or should have known of an employee's incompetence may be liable for injuries resulting from the employee's negligence)). The

elements for imposing liability upon an employer for the negligent hiring of an employee with a propensity for violence are as follows: (1) the employee had a propensity for violence; (2) the employer knew or should have known of this propensity; and (3) the employer, "in disregard for the rights of those persons with whom [the employee] could reasonably be expected to come into contact, hired [the employee], either negligently or with callous disregard for the rights of such persons." *Id.* at 11.

Patton has presented evidence that Nash had a criminal record for, *inter alia,* possession of a dangerous weapon, possession of cocaine with intent to sell, simple possession of cocaine and possession of a firearm with intent to go armed. *See* FBI Identification Record of Nash, attached as Exhibit I to Plaintiff's Response. Nash was sentenced to serve 11 months and 29 days and was fined $1,000.00 plus costs on the charge of simple possession of cocaine. All of the other charges against Nash were either dismissed or never brought to trial. Plaintiff asserts that these criminal charges are evidence of Nash's propensity for violence. Southern States asserts that these charges are not evidence of a propensity for violence.

■ The Court finds that Nash's criminal record may be evidence of a propensity to engage in criminal behavior. However, the record contains no evidence that Nash ever engaged in any violent activity. Although it is possible that Nash could have engaged in some violent activity, especially while in possession of a dangerous firearm, such a possibility does not satisfy the requirement that Nash have a propensity for violence.

"Propensity" is defined as "a natural inclination: innate or inherent tendency." Webster's Third New International Dictionary 1817 (Third Edition 1981). It is not sufficient that the plaintiff prove a mere possibility of violence. *See Offshore Logistics, Inc. v. Astro–Marine, Inc.,* 482 F.Supp. 1119, 1121 (E.D.La.1980). Rather, there must be some proof that the employee/assailant was a person of known vicious character or one whom the employer should have known had a vicious character.

*Schultz v. Evelyn Jewell, Inc.,* 476 F.2d 630, 631 (5th Cir.1973).

*Thatcher,* 657 F.Supp. at 11. Patton has failed to show that Nash had a propensity for violence from the evidence presented. Therefore, the Court need not reach the other prongs of the test outlined in *Thatcher.* Because no genuine issues of material fact exist on this issue, Southern States is entitled to summary judgment on Patton's theory of negligent hiring.

### IV. *Conclusion*

For the reasons set forth in this Opinion and Order and because no genuine issues of material fact exist, Southern States is entitled to judgment as a matter of law. The Court will not yet enter a Final Judgment in this cause because Defendant Tommy Nash has not yet been served with process, and by Order dated June 6, 1996, Plaintiff has been given until August 14, 1996, to accomplish this task.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by the Defendant Southern States Transportation, Inc. should be and hereby is granted.

SO ORDERED.