**Brenda JONES Plaintiff**

v.

**Janet AUTRY and Rack Room Shoes, Inc. and John Does A and B Defendants**

**No. 3:99CV898LN.**

United States District Court, S.D. Mississippi, Jackson Division.

April 25, 2000.

David C. Dunbar, Michael Todd Bartley, Harris, Geno & Dunbar, P.A., Jackson, MS, for Plaintiff.

Mitzi Dease Paige, U.S. Attorney's Office, Jackson, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Janet Autry to substitute the United States of America as a defendant pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. §§ 2675 and 2679, and to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Brenda Jones has responded in opposition to the motion and has also filed a motion to remand this action to the Circuit Court of the First Judicial District of Hinds County, Mississippi, from which it was removed. Defendant Autry, in turn, has responded in opposition to plaintiff's motion, and the court, having considered the memoranda and submissions of the parties, concludes that defendant's motion to substitute and to dismiss is well taken and should be granted and that plaintiff's motion to remand is not well taken and should be denied.

The events giving rise to this lawsuit first occurred on or about February 13, 1997, when Janet Autry reported the apparent theft of her wallet and credit cards to the Veterans Administration (VA) Police Service. Autry is an employee of the G.V. "Sonny" Montgomery VA Medical Center in Jackson, Mississippi and has been so employed for nearly twenty-five years. At the time of the events in question, Autry was employed as the Quality Manager for Pathology and Laboratory Medicine Service.

According to her affidavit, on Wednesday, February 12, 1997, Autry was attempting to write a check at Wal–Mart when she realized that the wallet containing her credit cards and driver's license was missing from her purse. Although she initially thought that the wallet had fallen out of her purse at work and into her desk drawer, when she was unable to locate the wallet upon returning to work the next day, Autry began to suspect that it may have been stolen from her purse while she was away from her desk reviewing records on February 10.[1] Autry

---

1. According to Autry's affidavit, her secretary was absent on that day.

claims that she had possession of the wallet as late as Sunday afternoon, February 9, when she wrote a check and used her wallet for identification purposes. After that, though, she apparently returned home and did not leave again until she went to work the next day.

To verify her suspicion that her wallet had been stolen, Autry began calling credit card companies to see if any unauthorized charges had been made on any of her accounts. Upon learning that such charges had been made on Monday, February 10 while she was at work, Autry realized that her wallet had, in fact, likely been stolen from her desk. Autry thus notified her immediate supervisor and contacted the VA Police Service to report the suspected theft.

Michael Williams, the officer assigned to investigate the theft, questioned Autry as to potential suspects. When Autry informed Williams that she had no idea who might have stolen her wallet, Williams questioned her as to the persons having access to her office. Williams then conducted a follow-up interview with the only person that Autry named, but concluded that the man interviewed was not likely to have been the perpetrator. As the plaintiff was not named as a potential suspect by Autry, she was neither contacted nor interviewed by Williams at this time. In fact, no one began to suspect the plaintiff until Autry and Williams spoke with Eric Snow, the manager of Rack Room Shoes, one of the stores at which Autry's credit cards had been used. Based upon Snow's description of the customer using Autry's credit card—a black female, approximately 5'7" tall, in her late twenties, with shoulder length hair [2]—and information provided by other VA employees, Williams concluded that it was the plaintiff who had stolen Autry's wallet and made unauthorized charges on her credit cards. Williams thus asked Autry which black females had access to her desk. Autry named a couple of individuals, but the plaintiff was again not among them. According to Autry, Williams then specifically asked whether the plaintiff could have accessed her desk. Autry confirmed that plaintiff occasionally visited the area to conduct business with her secretary, who was also the timekeeper, and that she could, therefore, have entered her office. Having learned that the plaintiff had access to Autry's office, Williams obtained a photograph of the plaintiff and presented it to Snow, who verified that the person in the photograph was, indeed, the person who had come into the store and purchased shoes with Autry's credit card on the date in question. Williams then transported Autry to the Jackson Police Department in a VA-marked vehicle to file charges against the plaintiff.

Plaintiff was arrested by the Jackson Police Department on March 5, 1997 and charged with credit card fraud. She was indicted on August 14, 1997. As a result of her arrest, plaintiff was placed on administrative leave without pay from her employment with the VA Hospital. Plaintiff's leave lasted for a period of two years, and, according to plaintiff, dictated that she not accept substitute employment.

Subsequently, on April 5, 1999, the charges against plaintiff were dismissed for lack of speedy trial. A few months later, on November 9, 1999, plaintiff filed this lawsuit in the Circuit Court of the First Judicial District of Hinds County, Mississippi, alleging that she had suffered great emotional and financial distress as a result of the negligent, grossly negligent, reckless, malicious and/or intentional false allegations made against her by Autry, Rack Room Shoes and John Does A and B. Plaintiff additionally claims to have suffered great humiliation, loss of liberty and embarrassment, for all of which she seeks to recover an unspecified amount of dam-

---

**2.** According to Autry's affidavit, the time and date of the purchase at Rack Room Shoes were reflected on the receipt, which would presumably have aided the manager in recalling the transaction.

ages, along with attorney's fees, interest and costs.

On December 22, 1999, Autry filed her notice of removal pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (Westfall Act), 28 U.S.C. § 2679(d)(2), an amendment to the Federal Tort Claims Act (FTCA), basing federal jurisdiction upon the certification of scope of employment executed by the United States Attorney.[3] On the same date, Autry filed the instant motion to substitute the United States of America in her stead as a defendant, also pursuant to the Westfall Act, and to dismiss plaintiff's complaint for failure to exhaust administrative remedies under the FTCA, 28 U.S.C. §§ 1346(b), 2675(a) *et seq.* Plaintiff has responded by denying that Autry's actions were performed within the course and scope of her employment and seeking remand on that basis.[4]

■ For purposes of removal, the Attorney General's certification of scope of employment under the Westfall Act is conclusive, as evidenced by the plain wording of the statute. *See Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 419, 115 S.Ct. 2227, 2228, 132 L.Ed.2d 375 (1995) (noting that "Section 2679(d)(2) states explicitly that 'certification of the Attorney General shall conclusively establish scope of employment for purposes of removal' "). As such, this case was properly removed to federal court, and plaintiff's motion for remand should thus be denied. However, a plaintiff may nevertheless challenge the Attorney General's certification insofar as

the substitution of the United States as a defendant is concerned. *See Williams v. United States,* 71 F.3d 502, 505 (5th Cir. 1995) (observing that the court has previously held "that the Attorney General's certification of scope of employment under the Westfall Act is subject to judicial review"). Assuming that plaintiff intends to make such a challenge, the court must thus determine whether Autry was acting within the scope of her employment under the Westfall Act when she reported the theft of her wallet to VA security and to the Jackson Police Department.

In making this determination, the court conducts a de novo review and must apply the law of the state in which the employee's conduct occurred. *Id.* Hence, Mississippi law applies in the instant case. Additionally, according to the Fifth Circuit, "the plaintiff should bear the burden of proof ... to show that the defendant's conduct was not within the scope of his or her employment." *Id.* at 506.

■ Under Mississippi law, when determining whether an employee is acting within the course and scope of her employment, the following should be considered:

(1) Whether the employee's conduct is "so unlike that authorized that it is substantially different;"

(2) Whether the act complained of is committed in the prosecution of the employer's business and within the scope of the employee's authority;

**3.** Section 2679(d)(2) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed ... to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto,

and the United States shall be substituted as the party defendant. The certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

Although the statute allows for certification by the Attorney General, "[t]he Attorney General, pursuant to his authority under 28 U.S.C. § 510, has delegated this authority to the United States Attorneys." *Meridian Int'l Logistics, Inc. v. United States,* 939 F.2d 740, 744 (9th Cir.1991) (citing 28 C.F.R. § 15.3).

**4.** Plaintiff does not deny that she has failed, at this point, to exhaust her administrative remedies.

(3) Whether such act is in furtherance of the business of the master and as an incident to the performance of the duties of the character or kind which he was employed to perform; and

(4) Whether the act was done in the course of and as a means of accomplishing the purposes of the employment and, therefore, in furtherance of the master's business.

*Patton v. Southern States Transportation, Inc.,* 932 F.Supp. 795, 799 (S.D.Miss.1996) (citing *Thatcher v. Brennan,* 657 F.Supp. 6, 8–9 (S.D.Miss.1986)) (additional citations omitted), *aff'd,* 816 F.2d 675 (5th Cir.1987). Considering these tests, in light of the evidence submitted by the parties, the court concludes that Autry was, in fact, acting within the course and scope of her employment when she reported the apparent theft of her wallet to VA officials and, subsequently, to the Jackson Police Department, and that the United States should, therefore, be substituted as the proper defendant in this action.

In her affidavit, Autry states that she notified the VA Police Service of the theft of her wallet because the theft occurred on VA premises and, in the annual mandatory training she had received at the VA, as well as in issues of "Straight Talk", the VA newsletter, she had been advised by the VA Police to notify them of any thefts occurring on VA premises. Regarding the charges brought against Jones with the Jackson Police Department, Autry further stated that VA Officer Williams advised her that he needed to take her downtown to the Jackson Police Department to file a report and that she rode with him in a VA Police emergency vehicle to do so. Officer Williams also accompanied Autry to the suppression hearing, again in a VA police vehicle. Additionally, all of Autry's activity concerning the reporting of the theft occurred during working hours. In support of her motion, Autry also submitted the affidavit of Richard P. Miller, the director of the Jackson Veterans Administration Medical Center (JVAMC), in which he confirms that Autry was acting in the course and scope of her employment when she reported the theft of her wallet to the VA Police Service. Miller additionally states that any employee of the JVAMC who witnesses or experiences the theft of any government or personal property while on JVAMC premises is expected to report such theft to the VA Police Service. According to Miller, "[t]he purpose of the VA Police Service is to provide a safe environment for the patients, visitors and employees who work at the JVAMC as well as to protect the life and property of the patients, visitors and employees;" thus, "any employee who witnesses or comes across any violation of the law on the VA premises would be remiss in not reporting it to the VA Police. The requirement of reporting such incidents is indeed a condition of employment at the VA." Miller furthermore affirms that Autry would have been expected to report the theft of her wallet to the VA Police Service, not the Jackson Police Department, and that she was not expected to take any personal leave in connection with the investigation or prosecution of the case.

Similarly, Carjester Johnson, Chief of the JVAMC Police Service, testified by affidavit that an employee, patient or visitor with knowledge of a theft occurring on JVAMC premises is expected to report such theft to his office, after which time an officer would be assigned to investigate the occurrence and to notify the Jackson Police Department or the Federal Bureau of Investigation, if such action is deemed appropriate. Like Miller, Johnson states that Autry would have been expected to report the theft of her wallet to the VA Police, rather than to the Jackson Police Department, since the theft occurred on VA premises. In fact, Johnson testified that he makes monthly presentations to new and current JVAMC employees regarding security issues in which he instructs employees that they are to report all thefts to the VA Police Service; and, in addition to his presentation to new employees, JVAMC employees are required to annually attend a security session at which this instruction is reiterated. Johnson further explains that his office has

produced a brochure entitled "Enhancing Your Environmental Security (EYES)", which discusses auto theft and theft of personal property and notifies employees that persons affected by crime on VA premises are expected to report such crimes to the VA Police. Johnson has also been interviewed by "Straight Talk" about the theft of personal property on VA premises and, in those interviews, has urged people to report such thefts to his office so that they may be investigated.

Finally, Dr. Robert Lynch, the chief of staff at the VA Hospital at the time of the events in question and the current medical center director, has testified by deposition to the effect that, while there is no express, written policy requiring JVAMC employees to report criminal activity, employees are encouraged through various means to report such activity and, in fact, have a duty not only to report such activity, but also to cooperate with the VA Police in their ensuing investigations.

Based on the foregoing evidence, the court concludes that Autry was acting within the course and scope of her employment, both when she reported the theft of her wallet to the VA Police Service and when she filed a report with the Jackson Police Department at the behest of VA Officer Williams. According to the testimony of Miller, Johnson and Lynch, it is clear not only that Autry was authorized to report the criminal activity and to aid in its prosecution, but also that she had a duty to do so and that her actions were taken in furtherance of and to the benefit of JVAMC business in that they helped to bring about a safe and secure environment for both patients and employees. *See Coleman v. United States*, 91 F.3d 820, (6th Cir.1996) (recognizing, in a case reversing the lower court's decision to resubstitute defendant in the place of the United States, that "the duties of an employee include those that he or she is 'expressly or impliedly' hired to perform" and noting

that, although the employer's request that the employee file a criminal compliant against a co-worker was not an order from her employer, it nevertheless "suggests an intention on the part of the [employer] to bring the filing into the realm of [defendant's] job-related conduct"); *see also Garcia v. Pizzolato*, No. 99–CIV–0898 (RCC), 2000 WL 328818, at * 2 (S.D.N.Y. March 28, 2000) (granting defendant's cross-motion for certification that she was acting within the scope of her employment when filing a criminal complaint accusing co-worker of harassment and holding that defendant's actions advanced the interests of her employer, the Veterans Affairs Medical Center (VAMC), "in that it helped to ensure the expeditious removal of a potentially dangerous person working at the VAMC and amongst its clients").

The FTCA provides a remedy for persons injured by the tortious activity of a United States employee where the employee was "acting within the scope of his office or employment . . ." when the injury occurred. 28 U.S.C. § 1346(b). The Westfall Act further provides that "[t]he remedy against the United States" allowed by the FTCA "is exclusive of any other civil action or proceeding for monetary damages." 28 U.S.C. § 2679(b)(1). However, specifically excepted from the FCTA's provisions are "[a]ny claim[s] arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . ." 28 U.S.C. § 2680(h). Thus, because plaintiff's complaint states causes of action against Autry arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contractual rights, this court lacks jurisdiction over such claims pursuant to § 2680(h) inasmuch as Autry was acting within the course and scope of her employment when the alleged injuries occurred.[5]

---

**5.** Even if plaintiff's claims were not barred by § 2680(h), the court would still lack jurisdiction under § 2675(a) since plaintiff has apparently failed to exhaust her administrative remedies. *See* 28 U.S.C. § 2675(a) (providing that an FTCA claim "shall not be instituted" against the United States unless the claimant

For the foregoing reasons, it is ordered that defendant's motions to substitute the United States as a defendant and to dismiss plaintiff's complaint should be and are hereby granted, and that plaintiff's motion to remand is denied.

first presents her claim to a federal agency