# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01156-SCT

*LINDA ANN SINGLEY AND STEVEN DALE*
*SINGLEY*

*v.*

*PHILLIP LEE SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/21/2001 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RENEE M. PORTER |
| | SHIRLEY ANN TAYLOR |
| ATTORNEYS FOR APPELLEE: | JAMES D. HOLLAND |
| | GEORGE MARTIN STREET, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/10/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Linda Ann Singley and Steven Dale Singley appeal to this Court from an adverse decision of the Lamar County Circuit Court. The issue before the Court concerns the course and scope of Coach Phillip Lee Smith's employment while supervising his baseball team's baseball throw booth at an event held by the Oak Grove High School PTA where Linda Singley was injured.  Under the Mississippi Tort Claims Act, Miss. Code Ann. § § 11-46-1 to -23 (Rev. 2002), there is a rebuttable presumption that any act or omission of a governmental employee within the time and at the place of employment is within the course and scope of employment. *Id*. § 11-46-5(3).  After a thorough review of the record and briefs, we

determine as a matter of first impression that proof by a preponderance of the evidence is necessary to overcome this rebuttable presumption. Next, we find that Coach Phillip Lee Smith (Smith) was acting within the course and scope of his employment. Finally, we hold that the release in question here absolutely discharges Smith from any liability for Singley's injuries.

## FACTS

¶2.     On October 20, 1994, Linda Ann Singley attended the Oak Grove Fall Festival where her daughter was working in a concessions booth. The Festival took place at Oak Grove High School in Lamar County, Mississippi, with the consent of school authorities, and was sponsored by the Oak Grove PTO, Inc. The purpose of the festival was to raise money for various organizations by operating booths or concessions. One such organization was the Oak Grove athletic booster club. It constructed and operated the baseball throw booth where participants threw a baseball at a backstop and a radar gun detected the speed of the throw. The bulk of the proceeds of the concession went towards the purchase of new sports equipment for Oak Grove athletics.

¶3.     While standing in the vicinity of the baseball throw, Singley was struck by an errant baseball thrown by a participant in the concession. The ball struck Singley in her left eye causing the loss of her left eye, paralysis of the left side of her face and other injuries.

¶4.     The baseball throw was designed by Oak Grove High School Assistant Baseball Coach Phillip Lee Smith (Smith), built under his direction by the baseball team, and overseen by Smith during the Festival. Smith was not named in the Singleys' October 1995 complaint. The defendants named in that complaint either settled with the Singleys or were dismissed by them. In January 1997, the Singleys amended their complaint to include Smith as a defendant. The amended complaint alleged Smith was negligent in the planning, construction, placement, operating, overseeing and maintaining of the concession because he

2

knew or should have known that the placement and operation of the backstop of the concession was dangerous to patrons of the festival.

¶5.    In May 2001, the Singleys settled with the remaining defendants (excluding Smith) and signed a release that stated

> In the event a decision is made by the Court or jury in the trial of this case that Phillip Lee Smith was acting as an employee of the district, as that term is defined by the Mississippi Tort Claims Act, this release shall constitute a full and final release and in accord and satisfaction to all of those released herein, as well as Coach Phillip Lee Smith, in his capacity as employee.

¶6.    In April 1997, Smith filed a motion for summary judgment. The circuit court heard oral arguments and granted the motion in December 1997, finding that Smith was acting in the course and scope of his employment and was therefore immune from liability under the Mississippi Tort Claims Act. The Singleys appealed this decision, and the Court of Appeals reversed and remanded the case to the circuit court for additional findings of fact as there was a legitimate issue of fact as to whether Smith was acting within the course and scope of his employment. *Singley v. Smith*, 739 So.2d 448 (Miss. Ct. App. 1999).

¶7.    On remand, the circuit court conducted a bifurcated trial with the agreement of the parties. After hearing evidence concerning the issue of whether Smith was acting within the course and scope of his employment, the circuit court again found that Smith was acting within the course and scope of his employment, that the statute of limitations bars the Singleys' claims against Smith, and that the release discharges Smith from any liability for Singleys' injuries.

¶8.     The Singleys now appeal that decision challenging whether Smith was acting in the course and scope of his employment.

## DISCUSSION

¶9. In reviewing the decision of a trial judge sitting without a jury, this Court may only reverse when the findings of the trial judge are manifestly wrong or clearly erroneous. ***Amerson v. State***, 648 So.2d 58, 60 ( Miss. 1994). A circuit judge sitting without a jury is accorded the same deference as a chancellor, his or her findings will not be overturned if supported by substantial evidence. ***Maldonado v. Kelly***, 768 So.2d 906, 908 (Miss. 2000).

¶10. In finding that Smith was acting within the course and scope of his employment, the circuit court cited ***Horton v. Jones***, 208 Miss. 257, 44 So. 2d 397 (1950), which held that courts must look to the totality of the circumstances and examine (1) the nature of the wrongful act, (2) the character of the employment, and (3) the time and place where the act was committed. ***Id.***

¶11. The Singleys, however, cite ***Partrige v. Harvey***, 805 So. 2d 668 (Miss. Ct. App. 2002), which cites both ***Horton*** and ***Thatcher v. Brennan***, 657 F. Supp. 6 (S.D. Miss. 1986), *aff'd mem.* 816 F.2d 675 (5th Cir. 1987), in finding that to determine whether a person was acting within the course and scope of their employment, courts should (1) look to whether the employer authorized or ratified the acts of the employees, (2) evaluate whether the employee acted within the scope of employment; and (3) determine whether the employee's conduct is substantially different from that authorized and whether the act was done as a means of accomplishing the purposes of the employment and in furtherance of the master's business.

¶12. The Singleys then cite ***Sears, Roebuck & Co. v. Creekmore***, 199 Miss. 48, 23 So. 2d 250, 251 (1945), which held that

> (1) The conduct of a servant is within the scope of employment only if
>     (a) it is of the kind he is employed to perform,
>     (b) it occurs substantially within the authorized time and space limits,
>     (c) it is actuated by a purpose to serve the master, and
>     (d) if force is intentionally used by the servant against another.

¶13. They also cite *Southern Railway v. Garrett*, 135 Miss. 219, 101 So. 348 (1924), for the proposition that an act committed outside the scope of employment does not make the master responsible unless he directed the act to be done or ratified it.

¶14. Smith takes a different approach, urging this Court to find that the Singleys must overcome a rebuttable presumption under Miss. Code Ann. § 11-46-5(3) (Rev. 2002), which provides

> it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.

¶15. This Court has not interpreted the rebuttable presumption of Miss. Code Ann. § 11-46-5; therefore, the issue is one of first impression. We hold that proof by a preponderance of the evidence is necessary to overcome that presumption. This means that the plaintiff must prove his case by producing evidence that is most consistent with the truth and that which accords best with reason and probability. It is that evidence which, after examination, has a greater persuasive and convincing force. *Gregory v. Williams*, 203 Miss. 455, 35 So. 2d 451, 453 (1948). It is evidence which has more convincing force and produces the belief that what is sought to be proved is more probable that not. *Gardner v. Wilkinson*, 643 F.2d 1135, 1137 (5th Cir. 1981). Under this standard and even without the presumption, the trial court considering the totality of the circumstances and the overwhelming proof by Smith properly found that Smith was acting within the course and scope of his employment.

¶16. This Court will reverse only where the findings of the trial judge are manifestly erroneous or clearly wrong. *Amerson v. State*, 648 So. 2d at 60. A judge sitting without a jury "has sole authority for determining the credibility of the witnesses." *Rice Researchers, Inc. v. Hiter*, 512 So. 2d 1259, 1265 (Miss. 1987). "'A circuit judge sitting without a jury is accorded the same deference as a chancellor,' and his findings are safe on appeal where they are supported by substantial, credible and reasonable evidence."

*Maldonado v. Kelly*, 768 So. 2d at 908 (citing *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000); *Puckett v. Stuckey*, 633 So. 2d 978, 982 (Miss. 1993)).

¶17. The trial court correctly ruled that Coach Phillip Lee Smith was acting in the course and scope of his employment with Oak Grove High School and the Lamar County School District at the time of Singley's injuries. The trial court held that under the provisions of the Mississippi Tort Claims Act the statute of limitations barred the plaintiffs' claims. The court also held that the Singleys' claims were barred by a release signed by the Singleys that specified that Smith would be released upon the determination that he was acting in the course and scope of his employment at the time of the incident. A final judgment was rendered in Smith's favor.

¶18. The sole issue before this Court is whether the findings of the trial judge were manifestly erroneous or wrong. *Amerson v. State*, 648 So. 2d at 60. Under the Mississippi Tort Claims Act it is rebuttably presumed that when an employee is covered by that Act, any act or omission within the time and in the place of such employment is to be considered to be within the course and scope of such employment. Miss. Code Ann. § 11-46-5(3). Further, the Mississippi Legislature has set out a limited number of acts considered outside an employee's course, and scope of employment. Under the Act a governmental employee shall not be considered as acting within the course and scope of his employment if the employee's conduct constitutes fraud, malice, libel, slander, defamation or any criminal offense other than a traffic violation. Miss. Code Ann. § 11-46-5(2).

¶19. The trial court correctly looked at the totality of the circumstances to examine the nature of the wrongful act, the employment character, and the time and place where the act occurred. *See Horton v. Jones*, 208 Miss. 257, 44 So. 2d 397 (1950). That court made crucial findings of fact, which are clearly substantial evidence in support of that decision. *See Maldonado v. Kelly,* 768 So. 2d at 908. The trial

court then went on to make a proper conclusion of law finding that Smith was clearly within the course and scope of his employment when the accident occurred. To determine whether Smith was acting within the course and scope of his employment, the trial court again properly looked to the totality of the circumstances. *Horton*, 44 So. 2d at 397. Specifically, it examined the nature of the wrongful act, the character of the employment and the time and place where the act was committed. *Id.* In *Horton* we further pointed out that:

> Even though the conduct of the servant was unauthorized, it is still in the scope of his employment, it is of the same general nature of, or incidental to, the conduct authorized. In order for the master to escape liability, it must be shown that the servant, when the wrongful act was committed, had abandoned his employment and gone about some purpose of his own, not incident to his employment.

*Id.* at 399 (citing *Loper v. Yazoo & M.V.R. Co.*, 166 Miss. 79, 145 So. 743 (1933); *Barmore v. Vicksburg, S. & P. Ry.*, 85 Miss. 426, 38 So. 210 (1905)). Although not employed to be negligent, this does not mean that the wrongful act is outside the scope of his employment. *Horton*, 44 So. 2d at 399.

¶20. In *Big "2" Engine Builders v. Freeman*, 379 So. 2d 888 (Miss. 1980), this Court defined "in the course and scope of employment" as applicable to workers' compensation issues. This Court stated that arising out of employment is a causal connection between the employment and the injury. *Id.* at 890. The Court further defined "in the course of employment" as "whenever the injury resulted from activity, which is "in its overall contours actuated (partly) by a duty to serve the employer or reasonable incident to the employment." *Id.*

¶21. As the trial court found, Smith was clearly acting in the course and scope of his employment. Smith would not have been present at the fundraiser nor would he have participated in the baseball team's

7

construction and operation of the concession stand using the team equipment and funding that team if not for his status as an employee of Oak Grove High School. Further, there was no evidence that Smith engaged in any of the exceptions contained in Miss. Code Ann. § 11-46-5(2).

¶22. A case such as this turns on the facts. The trial court's first order granted summary judgment in favor of Smith finding that Smith was immune from liability because he was acting in the course and scope of his employment on the date of the accident. The case was subsequently remanded by the Court of Appeals for further findings of fact. The additional findings of fact now within the record convince this Court that the trial court was correct in its judgment.

¶23. Smith was an employee of the Lamar County School District and the Oak Grove High School as a teacher and coach. The accident occurred on Oak Grove High School property. The Oak Grove Fall Festival was sanctioned and/or sponsored by the Oak Grove PTO, Inc. The use of the premises was approved by the Oak Grove Attendance Center and the Lamar County School District. Smith was acting as the Assistant Baseball Coach. The equipment used by the patrons was owned and provided by the Oak Grove High School. Smith's duties at the festival were the same as they were at any other time in his performance of his job in that they were performed in the best interests of Oak Grove High School. Under Smith's direction acting as their coach, the baseball throw was constructed by Oak Grove baseball players. Smith was responsible for setting up the throw at the Oak Grove Fall Festival. He became involved after the Oak Grove PTO delivered a letter in his teacher's box at the high school, asking for school groups and teams to operate booths at the festival. The PTO decided the location of the booth.

¶24. Smith and the team agreed to operate the booth to pay back the Athletic Booster Club for the team's radar gun. At the time of the accident, he was not at the Fall Festival for his own benefit, but for the benefit of the Oak Grove High School baseball team, the Oak Grove High School and the Lamar County

School District. The money that was received by the Oak Grove PTO at the festival was used on behalf and to benefit the team, the school and the school district. According to Karen Lewis, the chairman of the Oak Grove PTO, the Oak Grove baseball team operated the booth. Lewis also speculated that the team would use the money made by the team. Lewis stated that the proceeds received by the Athletic Booster Club were put back into the school's athletic facilities. Similarly, the Oak Grove PTO indicated that funds raised by the festival would be distributed to the school in an effort to improve the school. Smith operated the booth on behalf of the baseball team. He maintained that it was his responsibility to oversee the booth since he was the assistant coach. He was motivated to operate the booth to help repay the Athletic Booster Club which had recently purchased a radar gun for the Oak Grove High School baseball team. The Athletic Booster Club was created by parents to perform fund raising events to buy equipment and improve athletic facilities at the Oak Grove Attendance Center in the Lamar County School District. The club was founded to benefit the school because of limited funds allocated to athletics. The money made off of the booth was given to the Oak Grove Athletic Booster Club. The Booster Club provided the booth with coins and change to open the concession. The Athletic Booster Club would use the proceeds to buy equipment and meet the needs of the baseball team.

¶25.    Smith was not operating the booth in his capacity as an individual but rather as an employee and as the assistant baseball Coach at Oak Grove High School. Smith would not have been monitoring the booth if he had not been the Oak Grove High School Assistant Baseball coach at the time of the Oak Grove Fall Festival. "But for" his employment at the Oak Grove High School and the Lamar County School District, he would not have been at the Oak Grove Fall Festival nor would he have been asked to set up or operate the baseball throw. All of his actions were taken on behalf of Oak Grove High School and the Lamar County School District and in the course and scope of his employment with those entities.

9

¶26. After the Court of Appeals remanded the case to the trial court, the trial court once again found that Smith was acting in the course and scope of his employment. Testimony came from Carolyn Adams, the principal of Oak Grove Attendance Center, Karen Lewis, an Oak Grove PTO member and chairman of the festival, and Smith. Adams stated that the festival was held on the school football field and the "whole function of it was in support of the school." Adams testified as to the importance of fund-raising on the life of the school in that the school is dependent on outside funds for such programs to provide full and quality education for the children. Adams further indicated that the money raised was used to improve the school for the benefit of the children. Most importantly, she testified that the school required insurance to be purchased for events such as this.

¶27. Adams stated that a coach's individual duties were not all listed by the employment contracts. She testified that club or group sponsors are required to attend whenever there is a meeting or function. She testified that she would expect Smith to be present whenever the baseball team was officially gathered. She related that Smith, as assistant baseball coach, was the only school employee present at the booth, and she considered him to be the official sponsor of the booth.

¶28. Adams's deposition testimony described the character of the event and the nature of Smith's participation. In that deposition, she testified that she did not believe that Smith was operating the booth as an individual but on behalf of the team as a group or a club.

¶29. Smith's testimony was also relevant in support of his position that he was acting in the course and scope of his employment. He indicated that he volunteered to help at the festival because he felt it was his place to do so as the assistant baseball coach. A thorough review of his testimony reveals that "but for" his employment with Oak Grove High School and the Lamar County School District he would not have been at the fall festival.

¶30.    After the trial on remand, the trial court once again found that Smith was acting within the course and scope of his employment. The court's findings of fact are clearly indicative of Smith's status at the time of the incident. Relevant to the  court was that the Oak Grove Fall Festival is a fund raising function open to the general public and held on school grounds. Linda Singley was struck at that festival at a concession called the baseball throw.  The baseball throw is a concession that invites patrons to throw a baseball toward a backstop and have the throw clocked by a radar gun.  Josh Stuart, a patron, threw a ball and missed the backstop, hitting Singley in the face.  Smith was employed at that time as a teacher and assistant baseball coach at Oak Grove.  He was present to oversee the operation of the baseball throw.  The booth was constructed by the Oak Grove athletic booster club to raise money for sports equipment.  All of the money raised was to be given to Oak Grove sports teams.

¶31.    The trial court noted that it was undisputed that the money raised at the baseball throw was used to purchase equipment for the Oak Grove High School baseball team.  The trial court found that Smith was present at the Fall Festival to supervise the operation of the baseball throw by the members of the Oak Grove baseball team.  The trial court analyzed the scope of Smith's duties by looking past the "four corners" of his employment contract.  Finally, the trial court concluded by stating that Smith was present that day because of his employment and because he felt it was his place as an employee to be there and that he would have not been asked to be there unless he was employed as baseball coach at Oak Grove. Based on these findings, the circuit court again found Smith to be acting within the course and scope of his employment.

¶32.    To accept the position argued by Singley would subject educators to potential liability every time they step away from the schoolhouse door.  In his *position* as assistant coach of the Oak Grove baseball team, Smith was merely doing his job to supervise his baseball team in an attempt to raise money for the

11

new sports equipment. To accept the position argued by Singley would result in a dramatic curtailment or halt to many extracurricular activities within our public schools which allow children to receive a well-rounded education. We conclude that the facts here are more than enough to support the trial court's decision. In a bench trial such as the case at bar, when the trial judge sits as the finder of fact, he has the sole authority for determining the credibility of witnesses. *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994); *Bryan v. Holzer*, 589 So. 2d 648 (Miss. 1991); *Bell v. Parker*, 563 So. 2d 594, 597 (Miss. 1990). We hold that the trial court's decision was not manifestly erroneous.

## CONCLUSION

¶33. We hold that the statute of limitations and the release bar this action by the Singleys since Smith was acting in the course and scope of his employment with Oak Grove High School and the Lamar County School District. As a result, the Mississippi Tort Claims Act provides Smith immunity. We therefore affirm the trial court's judgment.

¶34. **AFFIRMED.**

**PITTMAN, C.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.**


**DIAZ, JUSTICE, DISSENTING:**

¶35. Had any other volunteer at the festival been negligent, his or her employment would not have exempted them from liability. It is unfair to the Singleys to rule that they are not able to recover from Smith because he was employed by the school district when, if this had occurred through the negligence of any other parent volunteer or student volunteer performing the same function as Smith, the Singleys would have been able to recover. Because I disagree that Smith was acting within the scope of his employment and

12

because the majority unjustly rewards Smith (and punishes the Singleys) for the erroneous classification it places on him, I respectfully dissent.

¶36.     The majority decides, as a matter of first impression, that the Singleys must prove by a preponderance of the evidence that the rebuttable presumption of Miss. Code Ann.§ §11-46-5 (Rev. 2002) has been overcome.  Although requiring a preponderance of the evidence may indeed be the proper burden of proof, I do not agree with the majority's decision to announce it in this case.  In order to apply the presumption, it must first be demonstrated that Smith was acting "within the time and place of his employment." In my opinion, the evidence presented in this case clearly establishes that Smith was outside both the time and the place of his employment as a baseball coach.

¶37.     Under ***Partrige v. Harvey***, 805 So.2d 668, 671 (Miss. Ct. App. 2002), this Court should (1) look to whether the employer authorized or ratified the acts of the employees, (2) evaluate whether the employee acted within the scope of employment; and (3) determine whether the employee's conduct is substantially different from that authorized and whether the act was done as a means of accomplishing the purposes of the employment and in furtherance of the master's business.

¶38.     Smith testified that he was working as a volunteer for the booster club, and not in an official capacity, and that the booth had been operated strictly by booster club members in the past.  Carolyn Adams, the principal and Smith's supervisor, stated in her affidavit that the festival was put on solely by the Oak Grove PTO and its volunteers, that the festival was held outside normal school hours, that it was not an officially sanctioned school activity, that she considered Smith the official sponsor of the booth, and that no employee of the school was required to attend or participate.  Adams also testified that the goal of the festival was to raise money for the school through the PTO, but that teachers were not required to attend the festival and would not be reprimanded for not attending.

13

¶39. From the trial testimony, the following conclusions are apparent: the school allows "clubs" to be formed under school created guidelines (that the club be approved and sponsored by a school employee); fundraisers are organized and held by the PTO for the benefit of the school sanctioned clubs; and the "clubs" which participate in the fundraisers include different grade levels and booster clubs (such as the athletic booster club). Furthermore, it is a normal occurrence for the sponsor of a club to be present to direct that club's booth. The booster club sponsored the baseball throw for the benefit of the baseball team, which is itself a "club" for all intents and purposes of the fundraiser. In fact, the baseball team members signed up to work time slots at the booth during the festival. It is true that Smith volunteered to work the booth, but all the teachers and school employees who sponsored clubs were technically "volunteers."

¶40. Smith was not acting as a "sponsor" of a club as the employee handbook defines those terms because the booster club was the actual sponsor of the baseball throw and Smith and his team volunteered to operate it because they would be the recipients of the money. As stated by the majority, the outcome of this decision depends greatly on interpretation of the facts.

¶41. It is my opinion that Smith was not acting within the time and at the place of his employment. Though the accident occurred on school property, Smith was not performing any duty of his employer. Principal Adams testified that Smith was not at the festival as an employee. The conduct of Smith as a volunteer at the Fall Festival was not of the kind he was employed to perform. He was hired to be an assistant baseball coach, not a volunteer at a PTO fundraiser. While it is indeed commendable that he volunteered his time and services for this event, he did not do so in order to benefit his employer or as an incident of his employment.

¶42.     The majority argues that "but for" Smith's employment he would not have been involved with the baseball throw.  However, as the Court of Appeals properly found, there are many activities a person may participate in "but for" their employment, but all of those activities are not considered to be within the course and scope of the employee's employment.  *Singley v. Smith*, 739 So. 2d 448, 451 (Miss. Ct. App. 1999).  As that court wisely reasoned:

> There are many activities that an employee would probably not undertake "but for" his employment. One such activity would be driving from home to the workplace each morning. However, there is no logical basis to conclude that every activity that can be fit into this kind of analysis is an official act within the course and scope of the individual's employment.

*Singley*, 739 So. 2d at 451.  I agree with this reasoning and conclude that a finding that Smith was acting within the course and scope of his employment based on a "but for" analysis is inappropriate.  Linda Singley was at the festival because her daughter was working there.  "But for" her daughter's work there, she would not have been at the festival.  Should we then, because their daughter was working at the festival, conclude that the Singleys only recourse against the school is workers' compensation benefits?

¶43.     As a volunteer at the festival, Smith was involved in a fund-raising project for the Booster Club, a completely separate organization; his actions did not serve his master.  The festival was not an officially sanctioned school activity.  It was a fund-raising function open to the general public; held outside normal school hours.  Smith's act of volunteering was not required or even suggested by his employer.  The event was not supervised by his employer and Smith's participation was solicited by the Booster Club, not the school.  Smith testified in his deposition that he built the booth on behalf of the Booster Club, not the school.  The proceeds from the booth were turned over to the Booster Club, not the school.  He personally received no compensation for his services.  Though some of the proceeds may have gone back into the

baseball team's general fund, they would have received the money with or without Smith's assistance as a volunteer.

¶44. If the Singleys were allowed to recover, I do not foresee the "dramatic curtailment or halt to many extracurricular activities within our public schools" which the majority warns against. Nor am I convinced that allowing the Singleys' action to proceed will "subject educators to potential liability every time they step away from the schoolhouse door." Rather, I foresee the majority's decision as the more damaging, as it will allow more tortfeasors to escape their personal liability by hiding under the cloak of governmental immunity. Extracurricular activities at our schools will not be curtailed if tortfeasors are held accountable for their actions; rather, these activities will be conducted more with the safety of our children as the utmost goal and less with the concern for limitation of personal liability.

¶45. The release signed by the Singleys, and relied upon by the majority as one reason to deny their claim, states as follows:

> In the event a decision is made by the Court or jury in the trial of this case that Phillip Lee Smith was acting as an employee of the district, as that term is defined by the Mississippi Tort Claims Act, this release shall constitute a full and final release and in accord and satisfaction to all of those released herein, as well as Coach Phillip Lee Smith, *in his capacity as employee*.

(emphasis added). Because Smith was not acting within the time and place of his employment, it follows, given the particular circumstances of this case, that he was not acting within the course and scope of his employment either. Therefore, the Mississippi Tort Claims Act does not apply, and the Singleys' claims are not barred by the statute of limitations or by principles of governmental immunity. Likewise, because the waiver signed by the Singleys only operated to release Smith "in his capacity as an employee" it does not bar their claim against him personally. I would reverse the judgment of the trial court and remand this case for proceedings not inconsistent with this opinion.

16

**McRAE, P.J., JOINS THIS OPINION.**